# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

PEGGY SAENZ, individually and as personal
representative over the Estate of PEGGY D.
SAENZ, deceased,

       Plaintiff,

vs.                                                                                    No. CIV 14-1005 JB/SMV

LOVINGTON MUNICIPAL SCHOOL
DISTRICT; BOARD OF EDUCATION;
DARIN MANES, Superintendent, and CHRIS
BRATTAIN, High School Principal, in their
individual and official capacities,

       Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the Defendant's [sic] Motion to Dismiss and

for Qualified Immunity, filed January 12, 2014 (Doc. 8)("Motion").  The Court held a hearing on

April 8, 2015.  The primary issues are: (i) whether Plaintiff Peggy Saenz sufficiently alleges that

the Defendants created the danger that harmed her daughter, Peggy D. Saenz ("D. Saenz");

(ii) whether the Defendants' conduct shocks the conscience; (iii) whether Saenz can maintain her

failure to train or supervise cause of action without an underlying constitutional violation;

(iv) whether Defendants Darin Manes and Chris Brattain violated a clearly established

constitutional right; and (v) whether the Court should retain supplemental jurisdiction of Saenz'

state law claims.  Saenz fails to allege that the Defendants' affirmative conduct created a danger

to D. Saenz or to allege that the Defendants' actions shock the conscience.  Accordingly, the

Court will dismiss her substantive due-process claim.  A failure-to-train or supervise cause of

action requires an underlying constitutional violation, and Saenz fails to allege how additional

training or supervision would have prevented D. Saenz' death.  Consequently, the Court will dismiss Saenz' failure-to-train or failure-to-supervise claim.  Because Manes and Brattain did not violate any clearly established constitutional rights, they are entitled to qualified immunity. Finally, because the Court will dismiss all of Saenz' federal claims, it will decline to exercise supplemental jurisdiction over her state law claims and will dismiss them without prejudice to her filing them in state court.  The Court will, thus, grant the Motion.

## **FACTUAL BACKGROUND**

The Court takes its facts from the Complaint for Damages, filed November 5, 2014 (Doc. 1)("Complaint"), as it must, under rule 12(b)(6) of the Federal Rules of Civil Procedure. The case arises out of the death of a seventeen-year-old high-school student -- D. Saenz -- who was thrown from a vehicle that was traveling in Defendant Lovington Municipal School District's parking lot.  See Complaint ¶ 3, at 2; id. ¶ 17, at 4.

D. Saenz was a high-school student at Lovington School District.  See Complaint ¶ 3, at 2.  Saenz is a resident of New Mexico and is the personal representative of D. Saenz' estate. See Complaint ¶ 4, at 2.  The Lovington School District and Defendant Board of Education are organized under the State of New Mexico's laws, and the Lovington Board of Education, the citizens of Lovington, Lea County, New Mexico elects, operates the Lovington School District. See Complaint ¶ 5, at 2.  The Lovington School District and its school facilities are within the State of New Mexico.  See Complaint ¶ 9, at 3.  Manes is the Lovington School District's superintendent and is contracted through the Board of Education to operate the school district. See Complaint ¶ 6, at 2.  Manes was in charge of, among other things, operating the Lovington School District's buildings and premises, and ensuring that they were "operated in a safe and secure manner."  Complaint ¶ 11, at 3.  Brattain is the principal at Lovington High School.  See

Complaint ¶ 7, at 2.  Brattain "was to operate the Lovington High School buildings and its premises in a safe and secure manner."  Complaint ¶ 12, at 3.

The Defendants "did not operate . . . the Lovington High School and its premises in a safe and secure manner for the benefit of the public and the students of Lovington High School."[1] Complaint ¶ 13, at 3.  The Defendants "allowed the negligent operation and maintenance of the Lovington High School parking lot which created a dangerous condition."  Complaint ¶ 14, at 3-4.  The Defendants "failed to supervise and control the Lovington High School parking lot which created a risk to the public and the students attending the high school."  Complaint ¶ 15, at 4.  The Lovington School District and the Lovington Board of Education were responsible for "maintaining the safety of its school personnel and its students" at Lovington High School and the premises of Lovington High School's parking lot.  Complaint ¶ 16, at 4.

On or about August 27, 2014, D. Saenz was thrown from a vehicle that was traveling in Lovington High School's parking lot.  See Complaint ¶ 17, at 4.  The parking lot was "without supervision and control of the Lovington Municipal School District, its' [sic] Board of Education, and its' [sic] employees."  Complaint ¶ 17, at 4.  Before August 27, 2014, the Defendants knew that the parking lot was in a dangerous condition, yet they did not do anything "to prevent the dangerous condition created by the negligence of the school district and its employees."  Complaint ¶ 18, at 4-5.  The Defendants ignored the dangerous condition and did nothing to prevent the August 27, 2014, accident.  See Complaint ¶ 19, at 5.  Students and citizens complained about the parking lot's dangerous condition, but the Defendants ignored the

---

[1]It is unclear whether Saenz is alleging that the Defendants did not operate the school and its premises in a safe manner, or that it did not do so for the benefit of the public and students -- i.e. they did it for some other purpose.  Because Saenz is suing the Defendants for an accident that occurred on the Lovington School District's premises, Saenz' intended meaning is likely that the Defendants did not operate the school or its premises in a safe manner.

complaints and did not remedy the situation.  See Complaint ¶ 25, at 6.  Before August 27, 2014, Manes and Brattain informed the Lovington School District and the Lovington Board of Education "that a dangerous condition existed at the Lovington High School Parking lot." Complaint ¶ 20, at 5.  Lovington High School has video cameras that caught the accident on tape.  See Complaint ¶ 21, at 5.  At the time of the accident, the Defendants did not employ student resource officers, employees, or security officers to supervise the parking lot and secure the students' safety.  See Complaint ¶ 22, at 5.

**PROCEDURAL BACKGROUND**

Saenz filed suit in federal court on November 5, 2014.  She alleges four Counts.  See Complaint ¶¶ 23-45, at 5-11.  The first Count is titled: "Wrongful Death - Failure to Protect Life."  Complaint at 5.  Saenz alleges that the Defendants failed to supervise and control the Lovington High School parking lot, which caused D. Saenz' death.  See Complaint ¶ 24, at 6. She alleges that the Defendants knew of the dangerous condition and ignored complaints about it.  See Complaint ¶¶ 25-26, at 6.  Saenz contends that the Defendants' actions and inactions deprived D. Saenz' rights that the Fourteenth Amendment to the Constitution of the United States of America protects.  See Complaint ¶ 27, at 6.  She also contends that the Defendants acted willfully and wantonly in violating D. Saenz' rights, and that they "had a duty to respond and eliminate the dangerous condition prior to the death of the Decedent."  Complaint ¶¶ 28-29, at 6.

Saenz' second Count is a state claim for the negligent "operation and maintenance of the Lovington High School building and its premises."  Complaint ¶¶ 30-33, at 7-8.  Her third Count is for substantive due-process violations.  See Complaint ¶¶ 34-39, at 8-9.  She alleges that the Defendants "were obligated to supervise, protect, and oversee the Lovington High School

parking lot under the circumstances."  Complaint ¶ 36, at 8.  Saenz alleges that the Defendants'
knowledge of the parking lot's dangerous condition and their decision to do nothing about it "is
shocking to the conscience," and constituted a "willful disregard of the dangerous condition of
the Lovington High School Parking prior to the Decedent's death."  Complaint ¶¶ 37-39, at 8-9.
Saenz' fourth Count is for deliberate indifference in training and supervising.  See Complaint
¶¶ 40-45, at 9-11.  She alleges that the Lovington School District and the Lovington Board of
Education violated her federal and state constitutional rights "by failing to maintain sufficient
supervision and control of its' employees to manage, supervise and control a dangerous
instrumentality, that being the Lovington Municipal School's High School parking lot."
Complaint ¶ 41, at 9-10.

>    **1.**        **The Motion and Briefing.**

The Defendants filed the Motion on January 12, 2015.  The Defendants contend that the
Lovington School District is not a proper party in the case, because only the Board of Education
has the capacity to be sued.  See Motion at 2, n.2 (citing N.M. Stat. Ann. § 22-5-4(E)).   The
Defendants assert that Counts 1 and 3 are both substantive due-process claims.  See Motion at 2,
n.3.  The Defendants argue that Saenz fails to state a valid claim, because she fails to allege that
a state actor harmed D. Saenz.  See Motion at 2.  They contend that Saenz' substantive due-
process claims have several defects.  See Motion at 2-3.  First, they assert that they did not have
a special relationship with D. Saenz that could trigger a constitutional duty to protect her from
third parties' harmful acts.  See Motion at 3.  Second, the Defendants contend that Saenz fails to
allege facts that they created the danger which led to D. Saenz' death and that Saenz has failed to
allege facts showing that their failure to train employees rose to the level of deliberate
indifference that is necessary to show a constitutional violation.  See Motion at 3.   The

Defendants also argue that Saenz' claims against Manes and Brattain, in their official capacities, are duplicative of her claims against the Lovington School District.  <u>See</u> Motion at 3.  They maintain that the Court should dismiss Saenz' state law claims, because of sovereign immunity, and because the Complaint does not meet federal pleading standards.  <u>See</u> Motion at 3.  Finally, the Defendants argue that Manes and Brattain are entitled to qualified immunity.  <u>See</u> Motion at 3.

The Defendants contend that a substantive due-process violation requires such egregious conduct that it shocks the conscience, and that Saenz' claim is based on the Defendants' failure to "supervise, train, and otherwise prevent the accident via safety policies and procedures." Motion at 6.  They contend that the Due Process Clause of the Fourteenth Amendment to the Constitution of the United States generally does not impose a duty to protect citizens from deprivations that private actors cause.  <u>See</u> Motion at 6 (citing <u>Maldonado v. Josey</u>, 975 F.2d 727 (10th Cir. 1992)).  The Defendants assert that there are two exceptions to this general rule: (i) the special-relationship exception; and (ii) the danger-creation exception.  <u>See</u> Motion at 6-7.  They argue that a special relationship usually arises when the state incarcerates or institutionalizes a person and that the United States Court of Appeals for the Tenth Circuit has held that involuntary restraint is central to determining whether a custodial relationship triggers a duty to protect.  <u>See</u> Motion at 7.  The Defendants assert that, in <u>Maldonado v. Josey</u>, the Tenth Circuit considered whether New Mexico's compulsory school attendance creates a special relationship between students and school officials.  <u>See</u> Motion at 7.  They maintain that the Tenth Circuit held that, unlike incarceration or institutionalization, a school does not have sufficient custody over a student to create a special relationship.  <u>See</u> Motion at 7-8.  The Defendants argue that, because they lacked a special relationship with D. Saenz, they had no constitutional duty to protect her

from third parties' harmful acts.  See Motion at 8.  They further argue that Saenz' allegation that they knew about the parking lot's dangerous conditions should not affect the Court's analysis, because foreseeability does not create an affirmative duty to protect.  See Motion at 8 (citing Graham v. Indep. Sch. Dist. No. I-89, 22 F.3d 991, 994 (10th Cir. 1994)).

The Defendants also argue that Saenz fails to allege danger creation.  See Motion at 8. They contend that a danger-creation claim requires reckless or intentional state action that shocks the conscience.  See Motion at 8.  The Defendants assert that negligence is insufficient to shock the conscience, and that an official's conduct must have "a high level of outrageousness and a magnitude of potential or actual harm."  Motion at 9.  They maintain that, even if Saenz satisfies the other danger-creation requirements, she has not pled sufficient facts showing that they acted recklessly and in conscious disregard of a risk, or that their conduct shocks the conscience.  See Motion at 9.  The Defendants argue that Saenz does not allege that they created a danger or increased D. Saenz' vulnerability to a danger.  See Motion at 9.  They contend that, although Saenz alleges that D. Saenz was thrown from a vehicle in the parking lot while school officials were not supervising the lot, Saenz does not show how their lack of supervision created a danger or increased D. Saenz' vulnerability to a danger.  See Motion at 9.  The Defendants assert that Saenz has not pled facts showing that they acted recklessly in conscious disregard to D. Saenz' constitutional rights, and that not supervising the parking lot was, at most, negligence.  See Motion at 9-10.  They also contend that they did not disregard D. Saenz' constitutional rights. See Motion at 10.  The Defendants argue that their conduct does not shock the conscience and that Saenz' claim is one that would ordinarily be a state tort claim.  See Motion at 10.

The Defendants maintain that Saenz fails to allege a failure-to-train cause of action.  See Motion at 10.  They assert that a 42 U.S.C. § 1983 action for failing to train requires notice that

an official's action or failure to act is substantially certain to result in a constitutional violation, and that the official consciously disregarded the risk. See Motion at 10. The Defendants contend that notice may be established by showing the existence of a pattern of tortious conduct or by showing that the violation is highly predictable. See Motion at 10. They argue that an official's failure to train must be so reckless or grossly negligent that the future misconduct is almost inevitable. See Motion at 10-11 (citing McDaniels v. McKinna, 96 F. App'x 575, 579 (10th Cir. 2004)(unpublished)). The Defendants maintain that Saenz has not alleged that they were aware of the parking lot's problems, that the problems could have been avoided through training, that Manes or Brattain were responsible for providing training, or that the Lovington School District or the Lovington Board of Education had a policy against providing training. See Motion at 11. They also argue that, because none of D. Saenz' constitutional rights were violated, they did not have a duty to provide training. See Motion at 11. The Defendants contend that, because there was no underlying constitutional violation, the lack of training did not result in a constitutional violation. See Motion at 12. The Defendants argue that Manes and Brattain are entitled to qualified immunity. See Motion at 12. They maintain that D. Saenz did not suffer a constitutional violation and that, even if she did, the constitutional right could not have been clearly established. See Motion at 13.

The Defendants argue that Saenz has failed to plead a claim for which there is a waiver of the Defendants' sovereign immunity under the New Mexico Tort Claims Act, N.M. Stat. Ann. § 41-4-1 ("NMTCA"). Motion at 13. They assert that Saenz merely alleges that they acted negligently. See Motion at 13. The Defendants contend that Saenz' allegations do not fit within any of the NMTCA's exceptions. See Motion at 13-14. They argue that the NMTCA is not

waived for negligent supervision and that Saenz' allegations do not amount to anything more than negligent supervision.  <u>See</u> Motion at 14.

Saenz responded to the Motion on March 12, 2014 (Doc. 20)("Response").  She argues that the Defendants have conceded that, before D. Saenz' death, they knew about the dangers in the parking lot.  <u>See</u> Response at 3.  She contends that Brattain made statements to the media that he knew about the dangerous conditions, and that he gave the Lovington School District and the Lovington Board of Education notice about the dangers.  <u>See</u> Response at 3.  Saenz maintains that the Complaint's allegations are sufficient to allege that the Defendants created a danger that caused D. Saenz' death.  <u>See</u> Response at 3.  She contends that the Defendants failed to train school employees after learning about the dangerous condition, which rose to the level of deliberate indifference to D. Saenz' constitutional rights.  <u>See</u> Response at 3.  Saenz contends that, because the Complaint alleges that the Defendants knew about the dangerous condition and failed to train employees, it sufficiently alleges a cause of action.  <u>See</u> Response at 4.  She maintains that she sufficiently alleges that the Defendants maintained policies that resulted in violating D. Saenz' rights.  <u>See</u> Response at 4.  Saenz refers to her allegations that the Defendants' "actions were a willfully and wonton and intentional, violation of the Decedents' Civil rights," and to her allegation that the Defendants' "conduct was shocking to the conscious [sic] of the Court by their willful intentional disregard of the dangerous condition."  Response at 5.

Saenz concedes that the Defendants did not have a special relationship with D. Saenz, but argues that the danger-creation doctrine applies.  <u>See</u> Response at 5-6.  She contends that the Complaint sufficiently alleges the necessary elements to establish a creation-of-danger theory.  <u>See</u> Response at 6-7.  Saenz states: "What is the conduct, when viewed in total, shocks the

conscience.  Such conduct should be viewed with the intent of the Governmental Entity and the intent of the Individual Employee with use of the Governmental Entity."  Response at 7 (spacing altered for readability).  Saenz asserts that a § 1983 action can be predicated on two forms of wrongful intent: (i) "an intent to harm"; or (ii) "an intent to place a person unreasonably at risk or [sic] harm."  Response at 7.  She contends that the second form of intent refers to reckless conduct and that she has alleged sufficient reckless conduct.  See Response at 7.

> Concerning the shocks-the-conscience requirement, Saenz argues:
>
> What can be more shocking to the conscience than a School District, Board, Principal, and Superintendent, entrusted with protecting the health, security, and life of a student in their school district, and Employees of the School District knowing that there was a dangerous condition that existed upon the premises, and intentionally, willfully, and wantonly disregarding the condition to the detriment of PEGGY D. SAENZ.

Response at 8.  She asserts that the shock-the-conscience standard has not been firmly defined and that it depends on each case's facts, but that the Defendants' conduct is more egregious than the defendant-officer's conduct in Green v. Post, 574 F.3d 1294 (10th Cir. 2009), where, according to Saenz, the defendant-officer drove through an intersection without activating his overhead emergency lights and collided with another vehicle, killing its occupant.  See Response at 8.  Saenz contends that the Tenth Circuit held that, taking the facts most favorable to the plaintiff, the defendant-officer's conduct shocked the conscience.  See Response at 8-9.

> Saenz argues that the NMTCA waives sovereign immunity for the negligent operation or maintenance of, among other things, buildings and furnishings.  See Response at 9 (N.M. Stat. Ann. § 41-4-6).  She asserts that, while the waiver does not extend to negligent supervision cases, it applies if the negligent operation or maintenance creates a dangerous condition that threatens the public or a class of people who use the facilities.  See Response at 10.  Saenz contends that, in Upton v. Clovis Municipal School District, 2006-NMSC-040, 141 P.3d 1259,

the Supreme Court of New Mexico held that a school district's failure to follow its safety policies fell within the NMTCA's waiver of sovereign immunity. <u>See</u> Response at 10. She asserts that she has alleged that the Defendants were negligent in the operation of the Lovington High School premises, which created a dangerous condition that threatened students. <u>See</u> Response at 10-11.

Saenz attaches to the Response a news article from the <u>Hobbs News-Sun</u>. <u>See</u> Associated Press, <u>Family Files Lawsuit</u>, Hobbs News-Sun (Nov. 7, 2014), filed March 12, 2015 (Doc. 20-1)("Article"). The Article states that D. Saenz' family filed a lawsuit against the Defendants. <u>See</u> Article at 1. The Article states that, after the accident, Brattain told the Lovington Board of Education members that, at the beginning of the year, he and other school administrators attempted to direct the traffic in the congested parking lot. <u>See</u> Article at 1. The Article notes that the board members told Brattain that he could direct traffic at his own risk and that, if he were hit by a car, the school was not liable. <u>See</u> Article at 1. It further states that the board members were looking into proposals for the parking lot, including stop signs, speed bumps, and parking bumpers. <u>See</u> Article at 1. It states that the school district hired a school resource officer to help supervise the parking lot. <u>See</u> Article at 1.

The Defendants replied on March 26, 2015. <u>See</u> Defendants' Reply in Support of Motion to Dismiss and for Qualified Immunity, filed March 26, 2015 (Doc. 21)("Reply"). They assert that Saenz fails to state what created the dangerous condition in the parking lot, state factual details about D. Saenz' death, or establish a nexus between the two. <u>See</u> Reply at 1. They maintain that Saenz has not alleged a constitutional violation and that the NMTCA does not waive the Defendants' sovereign immunity. <u>See</u> Reply at 1-2.

The Defendants argue that the Court should disregard the Article in ruling on the Motion. See Reply at 2.  They assert that, while the Court may consider documents attached to the Complaint, incorporated into the Complaint by reference, or for which judicial notice is appropriate, none of those exceptions apply to the Article.  See Reply at 2-3.  The Defendants further contend that the Court should exclude Brattain's statements in the Article as double hearsay.  See Reply at 3.

The Defendants maintain that Saenz fails to establish that they violated D. Saenz' constitutional rights.  See Reply at 4.  They contend that the danger-creation exception requires affirmative acts and that Saenz has not alleged any affirmative act on the Defendants' part which caused the danger.  See Reply at 4.  The Defendants argue that Saenz has alleged only omissions that created the harm.  See Reply at 4-5.  They also argue that Saenz has not alleged any action that shocks the conscience.  See Reply at 5.  They contend that the Complaint contains nothing more than legal conclusions.  See Reply at 5.  The Defendants argue that Saenz has alleged, at most, negligence.  See Reply at 5-6.  They assert that the shocks-the-conscience test is an objective one and that § 1983 actions should not replace traditional state tort law.  See Reply at 6.  The Defendants address Saenz' argument that the Tenth Circuit found that the defendant's conduct shocked the conscience in United States v. Post by arguing that the Tenth Circuit held that the defendant's conduct did not shock the conscience.  See Reply at 7.  The Defendants argue that, if an officer speeding through an intersection, without activating emergency lights, and killing another person does not shock the conscience, negligently supervising a parking lot also does not.  See Reply at 7.

The Defendants maintain that Manes and Brattain are entitled to qualified immunity, because they did not violate D. Saenz' constitutional rights, and because neither the Supreme

Court of the United States of America nor the Tenth Circuit has held that ordinary negligence can give rise to a constitutional violation. See Reply at 7-8. They assert that Upton v. Clovis Municipal School District and its progeny stand for the proposition that, if a public entity is aware of a dangerous condition on the property, that entity must provide adequate safety policies and procedures. See Reply at 8. The Defendants contend that Upton v. Clovis Municipal School District does not hold that negligent supervision waives sovereign immunity, but that a pattern of violence or negligently operating a facility may waive sovereign immunity, because it is more than failing to supervise. See Reply at 8-9. The Defendants maintain that there are no such facts in this case. See Reply at 9.

The Defendants argue that, in Espinoza v. Town of Taos, 1995-NMSC-070, 905 P.2d 718, the Supreme Court of New Mexico held that § 41-4-6 did not waive a municipality's sovereign immunity for failing to supervise a playground's slide during a summer camp. See Reply at 9. The Defendants maintain that Saenz has not identified what created the parking lot's dangerous condition and that she alleges only conclusory allegations. See Reply at 9. They contend that § 41-4-6 requires a plaintiff to identify specific dangerous conditions that created a dangerous condition. See Reply at 9.

### 2.     The April 8, 2015, Hearing.

The Court held a hearing on April 8, 2015. See Transcript of Hearing (taken Apr. 8, 2015)("Tr.").[2]  The Defendants again argued that Counts 1 and 3 allege the same cause of action -- substantive due process. See Tr. at 3:12-4:5 (Burnette, Court). They maintained that none of Saenz' claims meet the federal pleading standards and that Saenz has not alleged any facts that support a danger-creation theory. See Tr. at 4:15-5:7 (Burnette). The Defendants asserted that,

_____

[2]The Court's citations to the transcript of the hearing refer to the court reporter's original, unedited version. Any final version may contain slightly different page and/or line numbers.

if the Court grants the Motion on Counts 1-3, it will also have to dismiss Count 4, because a failure-to-train cause of action requires an underlying constitutional violation.  See Tr. at 5:8-24 (Burnette, Court).  They clarified that, even though the Motion states that it is the "Defendant's" Motion, all the Defendants brought the Motion, and that the apostrophe's placement in the Motion's caption is a typographical error.  Tr. at 11:3-9 (Burnette, Court).

Addressing the substantive due-process claims, the Defendants argued that Saenz has not alleged that they did anything to create the danger.  See Tr. at 11:11-20 (Burnette).  The Court asked what the dangerous condition was in the parking lot, and the Defendants stated that they were not sure, because Saenz did not allege in the Complaint what the dangerous condition was. See Tr. at 12:12-24 (Burnette).  The Defendants contended that, because the Complaint does not state what the dangerous condition was, it fails to satisfy the federal pleading standards.  See Tr. at 13:2-13 (Burnette).  They argued that the danger-creation theory requires allegations that they either created the danger or enhanced it, and that the Complaint states only that they knew about the danger.   See Tr. at 15:11-25 (Burnette, Court).   The Defendants noted that, because knowledge is alleged in the Complaint, the Court must assume that they knew about the danger, but that mere knowledge rises only to the level of negligence.  See Tr. at 16:1-14 (Burnette, Court).  They argued that Saenz must show that their conduct shocks the conscience and that the shocks-the-conscience standard requires more than negligence.  See Tr. at 17:7-20 (Burnette). The Defendants stated that the Article is not attached to the Complaint and, for that reason, the Court cannot consider it in ruling on the Motion.  See Tr. at 13:24-14:22 (Burnette, Court).

The Defendants argued that, even if the Court were to consider the additional facts that Saenz asserted and that were not alleged in the Complaint, her claim would boil down to the Defendants' failure to supervise the parking lot.  See Tr. at 26:18-6 (Burnette).  They maintained

that failure to supervise is not an affirmative act and that failing to supervise does not shock the conscience.  See Tr. at 27:6-13 (Burnette).

Concerning the failure-to-train claim, the Defendants argued that Saenz has not pled any facts on how they failed to train subordinates or how additional training may have alleviated the parking lot's problems.  See Tr. at 31:15-25 (Burnette).  They contended that, while deliberate indifference may be sufficient to support a constitutional violation, Saenz does not allege sufficient facts to show that they were deliberately indifferent in how they trained others.  See Tr. at 31:25-32:8 (Burnette).  The Court asked the Defendants if they had a case that says that, if a court dismisses all substantive due-process claims against individuals, a stand-alone failure-to-train claim must fail, and the Defendants stated that they did not find such a case, but that the same doctrinal framework from law enforcement cases should apply here.   See Tr. at 32:19-34:11 (Burnette, Court).  The Defendants maintained that negligent failure to train is insufficient and that Saenz must show deliberate indifference, which they contended requires a showing that, without the training, there was an extremely high likelihood that something bad would happen.  See Tr. at 34:19-35:8 (Burnette).  They contended that a constitutional failure-to-train claim requires awareness of a constitutional violation and not just awareness of a potential tort.  See Tr. at 38:21-40:6 (Burnette, Court)(citing Barney v. Pulsipher, 143 F.3d 1299 (10th Cir. 1998)).  The Defendants stated that they estimate that around one hundred cars park in the Lovington High School parking lot, but that they are not sure of the actual size.  See Tr. at 40:7-41:2 (Burnette, Court).

The Defendants argued that Manes and Brattain are entitled to qualified immunity, because the law is not clearly established.  See Tr. at 51:19-52:19 (Burnette, Court).  They contended that Uhlrig v. Harder, 64 F.3d 567 (10th Cir. 1995), is not on point, because it did not

involve a parking lot, and because the court ultimately granted qualified immunity.  See Tr. at 55:8-20 (Burnette).  In addressing Saenz' state law claims, the Defendants argued that the conduct in C.H. v. Los Lunas Schools Board of Education, 852 F. Supp. 2d 1344 (D.N.M. 2012) (Browning, J.), went beyond mere negligence, but here Saenz has alleged negligent supervision, which is insufficient to waive sovereign immunity.  See Tr. at 41:19-42:13 (Burnette, Court). The Defendants maintained that a sovereign immunity waiver under § 41-4-6 requires a specific condition which the defendants knew or should have known would create a dangerous condition. See Tr. at 42:5-43:12 (Burnette).  They argued that Saenz needs to show prior incidents that would have placed them on notice of the parking lot's dangerous condition.  See Tr. at 43:13-44:2 (Burnette, Court).  They noted that, if Saenz had alleged prior incidents of which the Defendants were aware, the prior incidents may change the Court's analysis, but that the prior incidents would need to include specific factual allegations describing the incidents.  See Tr. at 45:5-47:25 (Burnette, Court).  The Defendants argued that this case is more like Espinoza v. Town of Taos, because, like a playground slide, a parking lot is not inherently dangerous.  See Tr. at 44:8-20 (Burnette).  They argued that -- unlike hazing in a football locker room, which is fairly common -- reckless student conduct in a parking lot is not and that mere knowledge of an unsafe condition would, at most, create a negligence claim.  See Tr. at 49:23-50:23 (Burnette).

Saenz stated that she did not think there was any difference between Counts 1 and 2, and that they both allege substantive due-process violations.  See Tr. at 8:15-9:2 (Proctor, Court). Saenz argued that Manes and Brattain knew about the dangerous condition in the parking lot, yet consciously did not do anything to address it.  See Tr. at 7:14-25 (Proctor).  She contended that their recklessness is sufficient to state a substantive due-process claim and to state a negligent-supervision claim.   See Tr. at 6:25-7:20 (Proctor).   Saenz maintained that the

negligent-supervision claim can stand on its own.  See 8:3-14 (Proctor).  The Court asked her

how her failure-to-train claim could survive if it dismissed her substantive due-process claims,

and Saenz argued that it is brought against the Lovington Board of Education only, and not

against Manes and Brattain.  See Tr. at 9:3-17 (Proctor, Court).  Saenz noted that, if the Court

dismissed her federal claims, the Court should decline to exercise jurisdiction over her state

claims, by dismissing the case.  See Tr. at 9:18-25 (Proctor, Court).

Concerning substantive due process, Saenz argued that Brattain's statement that he told

the Defendants about the parking lot's dangerous condition in addition to the Defendants' failure

to supervise the parking lot or to hire a resource officer rises to the level of a substantive

due-process violation.  See Tr. at 18:2-13 (Proctor).  She stated that a resource officer is a police

officer who controls students in the parking lot.  See Tr. at 18:25-19:10 (Proctor, Court).  She

asserted that the parking lot also lacked stop signs and painted lines telling students which way to

drive.  See Tr. at 19:11-14 (Proctor); id. at 20:19-21:15 (Proctor, Court).  She contended that,

because the parking lot was crowded with students and lacked supervision, the Defendants

increased D. Saenz' vulnerability to danger.  See Tr. at 21:16-22:4 (Proctor).

Saenz described the accident by stating that D. Saenz stood on the running boards of a

friend's vehicle and that, when the friend drove away, D. Saenz fell off, hit her head, and died.

See Tr. at 22:5-23:9 (Proctor, Court).  Saenz stated that the school was going to require students

to have parking permits, which would have required every student to have a driver's license, but

that the school scrapped its parking permit plans.  See Tr. at 23:9-24:3 (Proctor).  She asserted

that the driver of the car did not have a driver's license, but conceded that she did not allege any

facts concerning the parking permits in the Complaint.  See Tr. at 23:10-19 (Proctor).  The Court

stated that, because the students were "horsing around," stop signs and painted lines would not

have prevented the accident, which meant that Saenz' important fact is the lack of adult supervision, and Saenz agreed that the important fact is the lack of adult or police supervision. Tr. at 24:4-15 (Proctor, Court).

Saenz argued that she does not need the Court to consider the Article, because the Complaint alleges that the Defendants knew about the dangerous condition and did nothing to remedy it. See Tr. at 19:14-20:17 (Proctor, Court). She maintained that, because the Defendants knew of the risks, but did not do anything to remedy them, the Defendants acted in reckless and conscience disregard. See Tr. at 24:16-25:1 (Proctor). Saenz asserted that, according to the Article, Brattain stated that he would be liable and that someone might get run over. See Tr. at 25:7-15 (Proctor). She argued that it is egregious that the Defendants knew about the parking lot's dangerous condition, yet did nothing to remedy it. See Tr. at 26:7-9 (Proctor).

Saenz contended that the Court dealt with a failure-to-supervise claim in C.H. v. Los Lunas Schools Board of Education, where, according to Saenz, the Court dealt with a failure to supervise case even though it concerned only state law. See Tr. at 28:7-29 (Proctor, Court). She also contended that, in Uhlrig v. Harder, the Tenth Circuit considered whether a state shocked the conscience by placing dangerous criminals in a mental hospital where a person was raped and another murdered. See Tr. at 29:10-30:12 (Proctor). Saenz stated that, outside Schaefer v. Las Cruces Public School District, 716 F. Supp. 2d 1052 (D.N.M. 2010)(Browning, J.), she could not find any substantive due-process cases involving high school facilities. See Tr. at 54:19-55:2 (Proctor, Court).

Addressing the Defendants' argument that a failure-to-train claim requires an underlying constitutional violation by an individual, Saenz argued that, in Glover v. Gartman, 899 F. Supp. 2d 1115 (D.N.M. 2012)(Browning, J.), the Court dismissed the individual claims but permitted

the failure-to-train claim to survive against the state entity.  See Tr. at 35:13-23 (Proctor); id. at 36:8-23 (Proctor, Court).  She contended that the Defendants knew about the dangerous condition, but were consciously indifferent by failing to implement policies, procedures, or training.  See Tr. at 35:23-36:7 (Proctor).  Saenz stated that she alleges conscious indifference by incorporating into Count 4 her preceding allegations in the Complaint.  See Tr. at 37:3-12 (Proctor, Court).  Even though Saenz stated earlier that her failure-to-train cause of action is against only the Lovington School District and the Lovington Board of Education, see Tr. at 9:3-17 (Proctor, Court), she argued that Manes and Brattain also failed to train others and made a conscious decision not to implement policies, training, or supervision, see id. at 37:13-25 (Proctor, Court).

Saenz argued that she sufficiently alleges a state law cause of action, because the Complaint states that the Defendants knew that the parking lot was inherently dangerous.  See Tr. at 48:7-22 (Proctor).  She asserted that she cannot provide facts from prior incidents showing the parking lot's dangerous condition, because she has not been allowed to interview school personnel or conduct discovery.  See Tr. at 48:23-49:6 (Proctor, Court).  Saenz argued that the Complaint contains sufficient allegations -- specifically that Brattain complained about the parking lot's condition -- for the Court to infer that prior incidents occurred in the parking lot.  See Tr. at 49:7-20 (Proctor, Court).

The Court informed the parties that it was inclined to grant the Motion and dismiss Saenz' substantive due-process claims.  See Tr. at 30:16-23 (Court).  The Court stated that it was inclined to dismiss Saenz' failure-to-train claim as well.  See Tr. at 41:3-18 (Court).  The Court told the parties that it would likely dismiss the federal claims and then dismiss the state claims without prejudice.  See Tr. at 55:21-56:8 (Court).

## LAW REGARDING RULE 12(b)(6)

Rule 12(b)(6) authorizes a court to dismiss a complaint for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  "The nature of a Rule 12(b)(6) motion tests the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true."  Mobley v. McCormick, 40 F.3d 337, 340 (10th Cir. 1994).  The sufficiency of a complaint is a question of law, and when considering a rule 12(b)(6) motion, a court must accept as true all well-pled factual allegations in the complaint, view those allegations in the light most favorable to the non-moving party, and draw all reasonable inferences in the plaintiff's favor.  See Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007)("[O]nly if a reasonable person could not draw . . . an inference [of plausibility] from the alleged facts would the defendant prevail on a motion to dismiss."); Smith v. United States, 561 F.3d 1090, 1098 (10th Cir. 2009)("[F]or purposes of resolving a Rule 12(b)(6) motion, we accept as true all well-pled factual allegations in a complaint and view these allegations in the light most favorable to the plaintiff."  (citing Moore v. Guthrie, 438 F.3d 1036, 1039 (10th Cir. 2006))).

A complaint need not set forth detailed factual allegations, yet a "pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action" is insufficient.  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)(citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Ashcroft v. Iqbal, 556 U.S. at 678.  "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  Bell Atl. Corp. v. Twombly, 550 U.S. at 555 (citation omitted).

To survive a motion to dismiss, a plaintiff's complaint must contain sufficient facts that, if assumed to be true, state a claim to relief that is plausible on its face.  See Bell Atl. Corp. v. Twombly, 550 U.S. at 570; Mink v. Knox, 613 F.3d 995, 1000 (10th Cir. 2010).  "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Ashcroft v. Iqbal, 556 U.S. at 678 (citing Bell Atl. Corp. v. Twombly, 550 U.S. at 556).  "Thus, the mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complainant must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims."  Ridge at Red Hawk, LLC v. Schneider, 493 F.3d 1174, 1177 (10th Cir. 2007)(emphasis omitted).  The Tenth Circuit stated:

> "[P]lausibility" in this context must refer to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs "have not nudged their claims across the line from conceivable to plausible."  The allegations must be enough that, if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for relief.

Robbins v. Oklahoma, 519 F.3d 1242, 1247 (10th Cir. 2008)(citations omitted)(quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 570).

Although affirmative defenses must generally be pled in the defendant's answer, not argued on a motion to dismiss, see Fed. R. Civ. P. 8(c), there are exceptions where: (i) the defendant asserts an immunity defense -- the courts handle these cases differently than other motions to dismiss, see Glover v. Gartman, 899 F. Supp. 2d at 1137-39, 1141 (citing Pearson v. Callahan, 555 U.S. 223 (2009); Robbins v. Oklahoma, 519 F.3d at 1242); and (ii) where the facts establishing the affirmative defense are apparent on the face of the complaint, see Miller v. Shell Oil Co., 345 F.2d 891, 893 (10th Cir. 1965)("Under Rule 12(b), a defendant may raise an affirmative defense by a motion to dismiss for the failure to state a claim.  If the defense appears

plainly on the face of the complaint itself, the motion may be disposed of under this rule.").  The defense of limitations is the affirmative defense that is most likely to be established by the uncontroverted facts in the complaint.  See 5 Charles Alan Wright, Arthur R. Miller, Mary Kay Kane, Richard L. Marcus & Adam N. Steinman, Federal Practice & Procedure: Civil § 1277, at 643 (3d ed. 2004).  If the complaint sets forth dates that appear, in the first instance, to fall outside of the statutory limitations period, then the defendant may move for dismissal under rule 12(b)(6).  See Rohner v. Union Pac. R.R. Co., 225 F.2d 272, 273-75 (10th Cir. 1955); Gossard v. Gossard, 149 F.2d 111, 113 (10th Cir. 1945); Andrew v. Schlumberger Tech. Co., 808 F. Supp. 2d 1288, 1292 (D.N.M. 2011)(Browning, J.).  The plaintiff may counter this motion with an assertion that a different statute of limitations or an equitable tolling doctrine applies to bring the suit within the statute; the Tenth Circuit has not clarified whether this assertion must be pled with supporting facts in the complaint or may be merely argued in response to the motion.  Cf. Kincheloe v. Farmer, 214 F.2d 604 (7th Cir. 1954)(holding that, once a plaintiff has pled facts in the complaint indicating that the statute of limitations is a complete or partial bar to an action, it is incumbent upon the plaintiff to plead, either in the complaint or in amendments to it, facts establishing an exception to the affirmative defense).  It appears, from case law in several circuits, that the plaintiff may avoid this problem altogether -- at least at the motion-to-dismiss stage -- by simply refraining from pleading specific or identifiable dates, see Goodman v. Praxair, Inc., 494 F.3d 458, 465-66 (4th Cir. 2007); Hollander v. Brown, 457 F.3d 688, 691 n.1 (7th Cir. 2006); Harris v. New York, 186 F.3d 243, 251 (2d Cir. 1999); Honeycutt v. Mitchell, No. CIV 08-0140 W, 2008 WL 3833472 (W.D. Okla. Aug. 15, 2008)(West, J.), and, although the Tenth Circuit has not squarely addressed this practice, the Court has permitted this avoidance

practice, see Anderson Living Trust v. WPX Energy Prod., LLC, No. CIV 12-0040 JB/KBM,

2014 WL 2750652, at *17, *37-39 (D.N.M. May 16, 2014)(Browning, J.).

## LAW REGARDING LIABILITY FOR CONSTITUTIONAL VIOLATIONS UNDER 42 U.S.C. § 1983

Section 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.  For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

42 U.S.C. § 1983.  "To state a claim under § 1983, a plaintiff must allege the violation of a right

secured by the Constitution and laws of the United States, and must show that the alleged

deprivation was committed by a person acting under color of state law."  West v. Atkins, 487

U.S. 42, 48 (1988).  Individual, non-supervisory defendants may be liable if they knew or

reasonably should have known that their conduct would lead to the deprivation of a plaintiff's

constitutional rights by others, and an unforeseeable intervening act has not terminated their

liability.  See Martinez v. Carson, 697 F.3d 1252, 1255 (10th Cir. 2012)("The requisite causal

connection is satisfied if [the defendants] set in motion a series of events that [the defendants]

knew or reasonably should have known would cause others to deprive [the plaintiffs] of [their]

constitutional rights.")(quoting Trask v. Franco, 446 F.3d 1036, 1046 (10th Cir. 2006)).  The

Supreme Court has made clear that there is no respondeat superior liability under 42 U.S.C.

§ 1983.  See Ashcroft v. Iqbal, 556 U.S. at 675 ("Because vicarious liability is inapplicable to

Bivens[3] and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."); Bd. of Cnty. Comm'rs v. Brown, 520 U.S. 397, 403 (1997). "An entity cannot be held liable solely on the basis of the existence of an employer-employee relationship with an alleged tortfeasor." Garcia v. Casuas, No. CIV 11-0011 JB/RHS, 2011 WL 7444745, at *25 (D.N.M. Dec. 8, 2011) (Browning, J.)(citing Monell v. Dep't of Soc. Servs., 436 U.S. 658, 689 (1978)). Supervisors can be held liable only for their own unconstitutional or illegal policies, and not for the employees' tortious acts. See Barney v. Pulsipher, 143 F.3d at 1307-08.

## 1.    Color of State Law.

"Under Section 1983, liability attaches only to conduct occurring 'under color of law.'" Gallagher v. Neil Young Freedom Concert, 49 F.3d 1442, 1447 (10th Cir. 1995). The under-color-of-state-law requirement is a "jurisdictional requisite for a § 1983 action, which . . . furthers the fundamental goals of preserving an area of individual freedom by limiting the reach of federal law . . . and avoiding imposing on the state, its agencies or officials, responsibility for conduct for which they cannot fairly be blamed." Jojola v. Chavez, 55 F.3d 488, 492 (10th Cir. 1995). "The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" West v. Atkins, 487 U.S. at 49 (quoting United States v. Classic, 313 U.S. 299, 326 (1941)). "The authority with which the defendant is allegedly 'clothed' may be either actual or apparent." Jojola v. Chavez, 55 F.3d at 493. Accordingly, at a base level, to find that an action was taken under color of state

---

[3]In Bivens v. Six Unknown Fed. Narcotics Agents, 403 U.S. 388 (1971), the Supreme Court held that a violation of the Fourth Amendment "by a federal agent acting under color of his authority gives rise to a cause of action for damages consequent upon his unconstitutional conduct." 403 U.S. at 389.

law, the court must find that "'the conduct allegedly causing the deprivation of a federal right' must be 'fairly attributable to the State.'"  Gallagher v. Neil Young Freedom Concert, 49 F.3d at 1447 (quoting Lugar v. Edmonson Oil Co., 457 U.S. 922, 937 (1982)).

In the context of a public employee, the Tenth Circuit has directed that, while "'state employment is generally sufficient to render the defendant a state actor . . . [,]' at the same time, it is 'well settled that an otherwise private tort is not committed under color of law simply because the tortfeasor is an employee of the state.'"  Jojola v. Chavez, 55 F.3d at 493 (quoting Lugar v. Edmonson Oil Co., 457 U.S. at 935-36 n.18; Mark v. Borough of Hatboro, 51 F.3d 1137, 1150 (3d Cir. 1995)).  Thus, "before conduct may be fairly attributed to the state because it constitutes action 'under color of state law,' there must be 'a real nexus' between the employee's use or misuse of their authority as a public employee, and the violation allegedly committed by the defendant."  Jojola v. Chavez, 55 F.3d at 493.  What constitutes the required real nexus, however, is not completely clear.  As the Tenth Circuit has stated, whether there is a real nexus in a particular case depends on the circumstances:

> The under color of law determination rarely depends on a single, easily identifiable fact, such as the officer's attire, the location of the act, or whether or not the officer acts in accordance with his or her duty.  Instead one must examine "the nature and circumstances of the officer's conduct and the relationship of that conduct to the performance of his official duties."

David v. City & Cnty. of Denver, 101 F.3d 1344, 1353 (10th Cir. 1996)(internal citations omitted)(quoting Martinez v. Colon, 54 F.3d 980, 986 (1st Cir. 1995)).

**2.      Individual Liability.**

Government actors may be liable for the constitutional violations that another committed, if the actors "set in motion a series of events that the defendant knew or reasonably should have known would cause others to deprive the plaintiff of her constitutional rights," thus establishing

the "requisite causal connection" between the government actor's conduct and a plaintiff's constitutional deprivations. Trask v. Franco, 446 F.3d at 1046.  The Tenth Circuit has explained that § 1983 liability should be "'read against the background of tort liability that makes a man responsible for the natural consequences of his actions.'" Martinez v. Carson, 697 F.3d at 1255 (quoting Monroe v. Pape, 365 U.S. 167, 187 (1961), overruled in part by Monell v. Dep't of Soc. Servs., 436 U.S. at 663).  "Thus, Defendants are liable for the harm proximately caused by their conduct." Martinez v. Carson, 697 F.3d at 1255 (citing Trask v. Franco, 446 F.3d at 1046).  As the Court has previously concluded, "a plaintiff who establishes liability for deprivations of constitutional rights actionable under 42 U.S.C. § 1983 is entitled to recover compensatory damages for all injuries suffered as a consequence of those deprivations.  The recovery should be guided by common-law tort principles -- including principles of causation . . . ." Train v. City of Albuquerque, 629 F. Supp. 2d 1243, 1251 (D.N.M. 2009)(Browning, J.).

The Tenth Circuit has found liability for those defendants who proximately caused an injury alleged under § 1983 and stated that the fact that the "conduct of other people may have concurrently caused the harm does not change the outcome as to [the defendant]," so long as there was not a superseding-intervening cause of a plaintiff's harm. Lippoldt v. Cole, 468 F.3d 1204, 1220 (10th Cir. 2006).

> Even if a factfinder concludes that the residential search was unlawful, the officers only "would be liable for the harm 'proximately' or 'legally' caused by their tortious conduct." Bodine v. Warwick, 72 F.3d 393, 400 (3d Cir. 1995). "They would not, however, necessarily be liable for all of the harm caused in the 'philosophic' or but-for sense by the illegal entry." Id.  In civil rights cases, a superseding cause, as we traditionally understand it in tort law, relieves a defendant of liability. See, e.g., Warner v. Orange Cnty. Dep't of Prob., 115 F.3d 1068, 1071 (2d Cir. 1997); Springer v. Seaman, 821 F.2d 871, 877 (1st Cir. 1987), abrogated on other grounds by Jett v. Dallas Indep. Sch. Dist., 491 U.S. 701 . . . (1989).

Trask v. Franco, 446 F.3d at 1046.  Thus, in the context of a claim under the Fourth Amendment, the Tenth Circuit has held that government actors "may be held liable if the further unlawful detention and arrest would not have occurred but for their conduct and if there were no unforeseeable intervening acts superseding their liability."  Martinez v. Carson, 697 F.3d at 1255. The Tenth Circuit gave an example of a superseding-intervening cause, quoting the Honorable Samuel J. Alito, then-United States Circuit Judge for the United States Court of Appeals for the Third Circuit, now-Associate Justice for the Supreme Court:

> Suppose that three police officers go to a suspect's house to execute an arrest warrant and that they improperly enter without knocking and announcing their presence.  Once inside, they encounter the suspect, identify themselves, show him the warrant, and tell him that they are placing him under arrest. The suspect, however, breaks away, shoots and kills two of the officers, and is preparing to shoot the third officer when that officer disarms the suspect and in the process injures him.  Is the third officer necessarily liable for the harm caused to the suspect on the theory that the illegal entry without knocking and announcing rendered any subsequent use of force unlawful?  The obvious answer is "no."  The suspect's conduct would constitute a "superseding" cause, see Restatement (Second) of Torts § 442 (1965), that would limit the officer's liability. See id. § 440.

Trask v. Franco, 446 F.3d at 1046 (quoting Bodine v. Warwick, 72 F.3d at 400).  Additionally, "[f]oreseeable intervening forces are within the scope of the original risk, and . . . will not supersede the defendant's responsibility."  Trask v. Franco, 446 F.3d at 1047 (quoting William Lloyd Prosser et al., Prosser and Keeton on Torts § 44, at 303-04 (5th ed. 1984)).  If

> the reasonable foreseeability of an intervening act's occurrence is a factor in determining whether the intervening act relieves the actor from liability for his antecedent wrongful act, and under the undisputed facts there is room for reasonable difference of opinion as to whether such act was wrongful or foreseeable, the question should be left for the jury.

Trask v. Franco, 446 F.3d at 1047 (citing Restatement (Second) of Torts § 453 cmt. b (1965)).

3.    **Supervisory Liability.**

The Tenth Circuit has held that supervisors are not liable under § 1983 unless there is "'an affirmative link . . . between the constitutional deprivation and either the supervisor's personal participation, . . . exercise of control or direction, or . . . failure to supervise.'" Gallagher v. Shelton, 587 F.3d 1063, 1069 (10th Cir. 2009)(quoting Green v. Branson, 108 F.3d 1296, 1302 (10th Cir. 1997))(internal alterations omitted).   Because supervisors can be held liable only for their own constitutional or illegal policies, and not for the torts that their employees commit, supervisory liability requires a showing that such policies were a "deliberate or conscious choice."   Barney v. Pulsipher, 143 F.3d at 1307-08 (citations omitted)(internal quotation marks omitted).   Cf. Bd. of Cnty. Comm'rs v. Brown, 520 U.S. at 404 ("[I]t is not enough for a § 1983 plaintiff merely to identify conduct properly attributable to the municipality. The plaintiff must also demonstrate that, through its deliberate conduct, the municipality was the 'moving force' behind the injury alleged." (emphasis in original)).

The Tenth Circuit has recognized that Ashcroft v. Iqbal limited, but did not eliminate, supervisory liability for government officials based on an employee's or subordinate's constitutional violations.   See Garcia v. Casuas, 2011 WL 7444745, at *25-26 (citing Dodds v. Richardson, 614 F.3d 1185 (10th Cir. 2010)).   The language that may have altered the landscape for supervisory liability in Ashcroft v. Iqbal is as follows: "Because vicarious liability is inapplicable to Bivens and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."   Ashcroft v. Iqbal, 556 U.S. at 676.   The Tenth Circuit in Dodds v. Richardson held:

> Whatever else can be said about Iqbal, and certainly much can be said, we conclude the following basis of § 1983 liability survived it and ultimately resolves this case: § 1983 allows a plaintiff to impose liability upon a defendant-supervisor who creates, promulgates, implements, or in some other way possesses

> responsibility for the continued operation of a policy the enforcement (by the
> defendant-supervisor or her subordinates) of which "subjects, or causes to be
> subjected" that plaintiff "to the deprivation of any rights . . . secured by the
> Constitution . . . ."

614 F.3d at 1199.  The Tenth Circuit noted that Ashcroft v. Iqbal "does not purport to overrule

existing Supreme Court precedent," but stated that "Iqbal may very well have abrogated § 1983

supervisory liability as we previously understood it in this circuit in ways we do not need to

address to resolve this case." Dodds v. Richardson, 614 F.3d at 1200.  It concluded that Ashcroft

v. Iqbal did not alter "the Supreme Court's previously enunciated § 1983 causation and personal

involvement analysis." Dodds v. Richardson, 614 F.3d at 1200.  The Tenth Circuit, based on this

conclusion, set forth a test for supervisory liability under § 1983 after Ashcroft v. Iqbal:

> A plaintiff may . . . succeed in a § 1983 suit against a defendant-supervisor by
> demonstrating: (1) the defendant promulgated, created, implemented or possessed
> responsibility for the continued operation of a policy that (2) caused the
> complained of constitutional harm, and (3) acted with the state of mind required
> to establish the alleged constitutional deprivation.

Dodds v. Richardson, 614 F.3d at 1199-1200 (citing Summum v. City of Ogden, 297 F.3d 995,

1000 (10th Cir. 2002)).  The Tenth Circuit noted, however: "We do not mean to imply that these

are distinct analytical prongs, never to be intertwined." Dodds v. Richardson, 614 F.3d at 1200

n.8.  Relying on the Supreme Court's opinion in Board of County Commissioners v. Brown, the

Tenth Circuit reasoned that two of the prongs often, if not always, are sufficient proof that the

third prong has been met also:

> Where a plaintiff claims that a particular municipal action itself violates federal
> law, or directs an employee to do so, resolving these issues of fault and causation
> is straightforward.  Section 1983 itself contains no state-of-mind requirement
> independent of that necessary to state a violation of the underlying federal right.
> In any § 1983 suit, however, the plaintiff must establish the state of mind required
> to prove the underlying violation.  Accordingly, proof that a municipality's
> legislative body or authorized decisionmaker has intentionally deprived a plaintiff
> of a federally protected right necessarily establishes that the municipality acted
> culpably.  Similarly, the conclusion that the action taken or directed by the

> municipality or its authorized decisionmaker itself violates federal law will also
> determine that the municipal action was the moving force behind the injury of
> which the plaintiff complains.

Dodds v. Richardson, 614 F.3d at 1200 n.8 (quoting Bd. of Cnty. Comm'rs v. Brown, 520 U.S.

at 404-05)(internal quotation marks omitted).  The Tenth Circuit noted that "[w]e think the same

logic applies when the plaintiff sues a defendant-supervisor who promulgated, created,

implemented or possessed responsibility for the continued operation of a policy that itself

violates federal law."  Dodds v. Richardson, 614 F.3d at 1200 n.8.  Thus, the Tenth Circuit

reduced the test to what can be seen as a two-part test for supervisor liability, requiring the

plaintiff to prove "an 'affirmative' link . . . between the unconstitutional acts by their

subordinates and their 'adoption of any plan or policy . . . -- express or otherwise -- showing

their authorization or approval of such misconduct.'"  Dodds v. Richardson, 614 F.3d at 1200-01

(quoting Rizzo v. Goode, 423 U.S. 362, 371 (1976)).

### 4.   **Municipal Liability.**

A municipality will not be held liable under § 1983 solely because its officers inflicted

injury.  See Graves v. Thomas, 450 F.3d 1215, 1218 (10th Cir. 2006).  Rather, to establish

municipal liability under § 1983, a plaintiff must demonstrate: (i) that an officer committed an

underlying constitutional violation; (ii) that a municipal policy or custom exists; and (iii) that

there is a direct causal link between the policy or custom, and the injury alleged.  See Graves v.

Thomas, 450 F.3d at 1218.  When a claim is brought against a municipality for failing to train its

officers adequately, the plaintiff must show that the municipality's inaction was the result of

deliberate indifference to the rights of its inhabitants.  See Graves v. Thomas, 450 F.3d at 1218.

## LAW REGARDING QUALIFIED IMMUNITY

Qualified immunity recognizes the "need to protect officials who are required to exercise their discretion and the related public interest in encouraging the vigorous exercise of official authority."  Harlow v. Fitzgerald, 457 U.S. 800, 807 (1982).  "Qualified immunity protects federal and state officials from liability for discretionary functions, and from 'the unwarranted demands customarily imposed upon those defending a long drawn-out lawsuit.'"  Roybal v. City of Albuquerque, No. CIV 08-0181 JB/LFG, 2009 WL 1329834, at *10 (D.N.M. Apr. 28, 2009)(Browning, J.)(quoting Siegert v. Gilley, 500 U.S. 226, 232 (1991)).  The Supreme Court deems it "untenable to draw a distinction for purposes of immunity law between suits brought against state officials under § 1983 and suits brought directly under the Constitution against federal officials."  Butz v. Economou, 438 U.S. 478, 504 (1978).  "The qualified immunity analysis is the same whether the claims are brought under Bivens or pursuant to the post-Civil War Civil Rights Acts."  Breidenbach v. Bolish, 126 F.3d 1288, 1291 (10th Cir. 1997), overruled on other grounds as recognized in Currier v. Doran, 242 F.3d 905 (10th Cir. 2001).

> Under § 1983 (invoked in this case) and Bivens v. Six Unknown Fed. Narcotics Agents, 403 U.S. 388 . . . (1971), a plaintiff may seek money damages from government officials who have violated her constitutional or statutory rights.  But to ensure that fear of liability will not "unduly inhibit officials in the discharge of their duties," Anderson v. Creighton, 483 U.S. 635, 638 . . . (1987), the officials may claim qualified immunity; so long as they have not violated a "clearly established" right, they are shielded from personal liability, Harlow v. Fitzgerald, 457 U.S. 800, 818 . . . (1982).  That means a court can often avoid ruling on the plaintiff's claim that a particular right exists.  If prior case law has not clearly settled the right, and so given officials fair notice of it, the court can simply dismiss the claim for money damages.  The court need never decide whether the plaintiff's claim, even though novel or otherwise unsettled, in fact has merit.

Camreta v. Green, 131 S. Ct. 2020, 2030-31 (2011).

Issues of qualified immunity are best resolved at the "earliest possible stage in litigation."

Pearson v. Callahan, 555 U.S. at 232 (quoting Hunter v. Bryant, 502 U.S. 224, 227 (1991)(per

curiam)).  "If qualified immunity is to mean anything, it must mean that public employees who are just doing their jobs are generally immune from suit."  Lewis v. Tripp, 604 F.3d 1221, 1230 (10th Cir. 2010).

Qualified immunity shields government officials from liability where "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  Pearson v. Callahan, 555 U.S. at 231 (quoting Harlow v. Fitzgerald, 457 U.S. at 818).  Qualified immunity also shields officers who have "reasonable, but mistaken beliefs," and operates to protect officers from the sometimes "hazy border[s]" of the law. Saucier v. Katz, 533 U.S. 194, 205 (2001).  When a defendant asserts qualified immunity, the plaintiff must demonstrate: (i) that the defendant's actions violated his or her constitutional or statutory rights; and (ii) that the right was clearly established at the time of the alleged misconduct.  See Riggins v. Goodman, 572 F.3d 1101, 1107 (10th Cir. 2009).

### 1.    Procedural Approach to Qualified Immunity.

The Supreme Court recently revisited the proper procedure for lower courts to evaluate a qualified immunity defense.  In Pearson v. Callahan, the Supreme Court held that lower courts "should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances of the particular case at hand."  555 U.S. at 236.  The Supreme Court also noted that, while no longer mandatory, the protocol outlined in Saucier v. Katz -- by which a court first decides if the defendant's actions violated the constitution, and then the court determines if the right violated was clearly established -- will often be beneficial.  See Pearson v. Callahan 555 U.S. at 241.  In rejecting the prior mandatory approach, the Supreme Court recognized that "[t]here are cases in which it is plain that a constitutional right is not clearly established but far from obvious whether

in fact there is such a right," and that such an approach burdens district court and courts of appeals with "what may seem to be an essentially academic exercise."  555 U.S. at 237.  The Supreme Court also recognized that the prior mandatory approach "departs from the general rule of constitutional avoidance and runs counter to the older, wiser judicial counsel not to pass on questions of constitutionality unless such adjudication is unavoidable."  555 U.S. at 241 (alterations omitted)(internal quotation marks omitted).  See Reichle v. Howards, 132 S. Ct. 2088, 2093 (2012)(affirming Pearson v. Callahan's procedure and noting that deciding qualified immunity issues on the basis of a right being not "clearly established" by prior case law "comports with our usual reluctance to decide constitutional questions unnecessarily").  Once the plaintiff establishes an inference that the defendant's conduct violated a clearly established constitutional right, a qualified immunity defense generally fails.  See Cannon v. City & Cnty. of Denver, 998 F.2d 867, 870-71 (10th Cir. 1993).

The Supreme Court recognizes seven circumstances where district courts should proceed directly to and "should address only" the clearly established prong of the qualified immunity analysis: when (i) the first, constitutional violation question "is so factbound that the decision provides little guidance for future cases"; (ii) "it appears that the question will soon be decided by a higher court"; (iii) deciding the constitutional question requires "an uncertain interpretation of state law"; (iv) "qualified immunity is asserted at the pleading stage," and "the precise factual basis for the . . . claim . . . may be hard to identify"; (v) tackling the first element "may create a risk of bad decisionmaking," because of inadequate briefing; (vi) discussing both elements risks "bad decisionmaking," because the court is firmly convinced the law is not clearly established and is thus inclined to give little thought to the existence of the constitutional right; or (vii) the doctrine of "constitutional avoidance" suggests the wisdom of passing on the first constitutional

question when "it is plain that a constitutional right is not clearly established but far from

obvious whether in fact there is such a right." <u>Kerns v. Bader</u>, 663 F.3d 1173, 1180-81 (10th

Cir. 2011)(quoting <u>Pearson v. Callahan</u>, 555 U.S. at 236-42).[4]  Regarding the last of these seven

circumstances, the Supreme Court has clarified that courts may "avoid avoidance" and address

the first prong before the second prong in cases involving a recurring fact pattern, where

guidance on the constitutionality of the challenged conduct is necessary, and the conduct is likely

only to face challenges in the qualified immunity context.  <u>Camreta v. Greene</u>, 131 S. Ct.

___

[4]As former-Tenth Circuit judge, and now Stanford law school professor, Michael McConnell, has pointed out, much of what lower courts do is read the implicit, unwritten signs that the superior courts send them through their opinions.  <u>See</u> Michael W. McConnell, Address at the Oliver Seth American Inn of Court: How Does the Supreme Court Communicate Its Intentions to the Lower Courts: Holdings, Hints and Missed Signals (Dec. 17, 2014).  This practice is good for the nation's judicial system to achieve uniformity in a nation of 319 million people.  <u>See</u>, <u>e.g.</u>, <u>Michigan v. Long</u>, 463 U.S. 1032, 1040 (1983)(stating that "there is an important need for uniformity in federal law").  <u>But see</u> Amanda Frost, <u>Overvaluing Uniformity</u>, 94 Va. L. Rev. 1567 (2008)(criticizing courts' focus on uniformity of the law).  If a district court in New Mexico is trying -- as it does diligently and faithfully -- to receive and read the unwritten signals of its superior courts, it would appear that Justice Alito in <u>Pearson v. Callahan</u> and Judge Gorsuch in <u>Kerns v. Bader</u> are trying to suggest that district courts should, whenever possible, decide qualified immunity on the clearly established prong.  For example, Justice Alito and Judge Gorsuch gave seven situations that the Court should decide a case solely on the clearly established element and not "avoid avoidance."  <u>See</u> <u>Kerns v. Bader</u>, 663 F.3d at 1180-81 (noting the seven situations in which a court should skip step one and decide a case on the clearly established prong).  Even the phrase "avoid avoidance" suggests that the district court is to avoid, not decide, the constitutional issue.

The Court is concerned about this push to not decide constitutional issues, for a number of reasons.  The Court set forth some of these in <u>Kerns v. Board of Education</u>, which the Court quotes in Note 5.  <u>See infra</u> Note 5.  Additionally, there is a practical problem.  Sometimes, for a district court to really know whether a right is clearly established, it has to do the first analysis, and thoroughly explore whether there is a right and whether it has been violated.  If it jumps to the mushy, hazy area of clearly established without knowing what the right is, the analysis lacks any precision.  However, while appellate courts may think that jumping to the clearly established prong saves district courts a lot of trouble, in the Court's experience, the old rule -- in <u>Saucier v. Katz</u> -- made more sense and, practically, is the way the Court still has to go in many cases.

2020, 2031-32 (2011).  See Kerns v. Bader, 663 F.3d at 1181.[5]  "Courts should think carefully

before expending 'scarce judicial resources' to resolve difficult and novel questions of

─────────────

[5]In Kerns v. Bader, the Tenth Circuit reversed the Court's decision that an officer was not entitled to qualified immunity, noting that the Court "analyzed both aspects of the qualified immunity test before agreeing" with the plaintiff that the qualified immunity defense did not protect the officer.  663 F.3d at 1183.  In reversing, the Tenth Circuit stated:

> Because we agree with Sheriff White on the latter (clearly established law) question, we reverse without addressing the former (constitutional violation) question.  And we pursue this course because doing so allows us to avoid rendering a decision on important and contentious questions of constitutional law with the attendant needless (entirely avoidable) risk of reaching an improvident decision on these vital questions.

663 F.3d at 1183-84.  The Tenth Circuit did not analyze whether the officer violated the plaintiff's constitutional rights and stated that guidance on the particular constitutional issue would be more appropriate in a case not involving qualified immunity: "Neither do we doubt that the scope of the Constitution's protection for a patient's hospital records can be adequately decided in future cases where the qualified immunity overlay isn't in play (e.g., through motions to suppress wrongly seized records or claims for injunctive or declaratory relief)."  663 F.3d at 1187 n.5.  On remand, the Court stated:

> While the Court must faithfully follow the Tenth Circuit's decisions and opinions, the Court is troubled by this statement and the recent trend of the Supreme Court's hesitancy in § 1983 actions to address constitutional violations.  A Reconstruction Congress, after the Civil War, passed § 1983 to provide a civil remedy for constitutional violations.  See Mitchum v. Foster, 407 U.S. 225, 238-39 (1972).  In Mitchum v. Foster, the Supreme Court explained:
>
> > Section 1983 was originally § 1 of the Civil Rights Act of 1871 . . . and was enacted for the express purpose of "enforc(ing) the Provisions of the Fourteenth Amendment." . . .  The predecessor of § 1983 was thus an important part of the basic alteration in our federal system wrought in the Reconstruction era through federal legislation and constitutional amendment.
>
> 407 U.S. at 238-39.  Congress did not say it would remedy only violations of "clearly established" law, but that
>
> > [e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction

thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.

42 U.S.C. § 1983 (emphasis added).  The Supreme Court established the qualified immunity defense in Pierson v. Ray, 386 U.S. 547 (1967), and held that officials were not liable for constitutional violations where they reasonably believed that their conduct was constitutional.  See E. Clarke, Safford Unified Sch. Dist. No. 1 v. Redding: Why Qualified Immunity is a Poor Fit in Fourth Amendment School Search Cases, 24 B.Y.U. J. Pub. L. 313, 329 (2010).  The Supreme Court first introduced the "clearly established" prong in reference to an officer's good faith and held that a compensatory award would only be appropriate if an officer "acted with such an impermissible motivation or with such disregard of the [individual's] clearly established constitutional rights that his action cannot reasonably be characterized as being in good faith."  Wood v. Strickland, 420 U.S. 308, 322 (1975).  In Harlow v. Fitzgerald, when the Supreme Court moved to an objective test, the clearly-established prong became a part of the qualified immunity test. See 457 U.S. at 818 ("We therefore hold that government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights.").  It seems ironic that the federal courts would restrict a congressionally mandated remedy for constitutional violations -- presumably the rights of innocent people -- and discourage case law development on the civil side -- and restrict case law development to motions to suppress, which reward only the guilty and is a judicially created, rather than legislatively created, remedy. Commentators have noted that, "[o]ver the past three decades, the Supreme Court has drastically limited the availability of remedies for constitutional violations in" exclusionary rule litigation in a criminal case, habeas corpus challenges, and civil litigation under § 1983.  J. Marceau, The Fourth Amendment at a Three-Way Stop, 62 Ala. L. Rev. 687, 687 (2011).  Some commentators have also encouraged the courts to drop the suppression remedy and the legislature to provide more -- not less -- civil remedies for constitutional violations.  See Christopher Slobogin, Why Liberals Should Chuck the Exclusionary Rule, 1999 U. Ill. L. Rev. 363, 390-91 (1999)("Behavioral theory suggests that the exclusionary rule is not very effective in scaring police into behaving. . . .  These theories also suggest that a judicially administered damages regime . . . would fare significantly better at changing behavior at an officer level."); Hon. Malcolm R. Wilkey, Constitutional Alternatives to the Exclusionary Rule, 23 S. Tex. L.J. 531, 539 (1982)(criticizing the exclusionary rule and recommending alternatives).  In Hudson v. Michigan, 547 U.S. 586 (2006), the Supreme Court noted that civil remedies were a viable

constitutional or statutory interpretation that will 'have no effect on the outcome of the case.'"
Ashcroft v. al-Kidd, 131 S. Ct. 2074, 2080 (2011)(quoting Pearson v. Callahan, 555 U.S.
at 236-37). See Camreta v. Greene, 131 S. Ct. at 2032 ("In general, courts should think hard, and
then think hard again, before turning small cases into large ones.").[6]   The Tenth Circuit will

---

alternative to a motion to suppress when it held that the exclusionary rule was
inapplicable to cases in which police officers violate the Fourth Amendment when
they fail to knock and announce their presence before entering. See 547 U.S. at
596-97. Rather than being a poor or discouraged means of developing
constitutional law, § 1983 seems the better and preferable alternative to a motion
to suppress. It is interesting that the current Supreme Court and Tenth Circuit
appear more willing to suppress evidence and let criminal defendants go free, than
have police pay damages for violations of innocent citizens' civil rights. It is odd
that the Supreme Court has not adopted a clearly established prong for
suppression claims; it seems strange to punish society for police violating unclear
law in criminal cases, but protect municipalities from damages in § 1983 cases.

Kerns v. Bd. of Comm'rs, 888 F. Supp. 2d 1176, 1224 n.36 (D.N.M. 2012)(Browning, J.),
abrogated on other grounds as recognized in Ysasi v. Brown, No. CIV 13-0183 JB/CG, 2014 WL
936835, at *9 n.24 (D.N.M. Feb. 28, 2014)(Browning, J.).   See Richard E. Myers, Fourth
Amendment Small Claims Court, 10 Ohio St. J. Crim. L. 571, 590-97 (2013)(arguing that
municipalities should establish small-claims courts to adjudicate police officers' Fourth
Amendment violations and award monetary judgments).

[6]In Kerns v. Board of Commissioners, the Court expressed concern with Justice Elena
Kagan's comments about "large" and "small" cases:

While the Court is, of course, obligated to follow faithfully the Supreme Court's
decisions and opinions, the Court has always been unenlightened and even
troubled by Justice Elena Kagan's comments in Camreta v. Greene about "large"
and "small" cases. 131 S. Ct. at 2032. As a trial judge, the Court has tried
assiduously to avoid thinking about or categorizing some cases as "large" and
some as "small." It usually is not mentally healthy for a judge to put all his or her
energy into "large" cases and slight "small cases"; to the litigants, their case is the
most important case on the Court's docket, and it is usually wise for the judge to
treat each case on which he or she is working -- at that moment -- as the most
important case at that moment. Getting the decision "right," i.e. getting the law
and facts correct and accurate, is obviously important, but getting it right is only
one-half of a judge's task, particularly a trial judge's job. The other half of
dispensing justice is the appearance of justice -- did the Court listen to the
litigant's arguments, wrestle with those arguments, and deal with them in an
intellectually honest way. Americans are pretty good about accepting a judicial

decision -- even an adverse one -- and cease obsessing over an issue, if they are convinced that an authority figure has dressed up, taken them seriously, listened patiently and politely, wrestled with the arguments, addressed them, and accurately stated the facts.  The Court believes that, if it starts looking at some cases before it as "large" and some as "small," it begins a slippery slope that does not accomplish both halves of the task of dispensing justice.  The justice system depends so much on the nation respecting and accepting the courts' proceedings and decisions, because courts have very little "power" that does not depend on that acceptance.  Thus, Justice Kagan's comments are not only not self-defining, but they are disturbing.

If, perhaps, a "large" case is a Supreme Court case or one that comes from the East Coast or California, rather than one in a district court in New Mexico, then it helps to look at what cases the Supreme Court has decided for the plaintiff. The three most recent qualified immunity cases, the Supreme Court dealt with are: (i) Reichle v. Howards, 132 S. Ct. 2088 (2012); (ii) Filarksy v. Delia, 132 S. Ct. 1657 (2012); and (iii) Messerschmidt v. Millender, 132 S. Ct. 1235 (2012). In Reichle v. Howards, the Supreme Court determined that secret service agents were entitled to qualified immunity for arresting a protestor who touched the Vice President and held that it was not clearly established that an arrest supported by probable cause could give rise to a First Amendment violation.  See 132 S. Ct. at 2092, 2097.  In Filarsky v. Delia, the Supreme Court held that a private individual that the government hires to do its work, an internal affairs review, is entitled to seek qualified immunity for Fourth and Fourteenth Amendment violations. See 132 S. Ct. at 1660, 1668.  In Messerschmidt v. Millender, the Supreme Court held that police officers in Los Angeles, California were entitled to qualified immunity when they relied on an invalid warrant to search a home, because a reasonable officer would not have realized the error.  See 132 S. Ct. at 1241, 1250.  The Supreme Court has not denied qualified immunity since 2004 in Groh v. Ramirez, 540 U.S. 551 (2004), where it held that an officer unreasonably relied on a deficient warrant.  See 540 U.S. at 565. The Court does not think those presumably "large" cases (they are Supreme Court cases, after all) are any different -- substantively, legally, or factually -- than this case involving the search of a citizen's home after someone shot down a police helicopter and then detained that suspect for nine months until the United States realized that J. Kerns could not have shot down the helicopter.

On the flip side, treating large cases like they are large cases can create an appearance problem to the public and to the litigants -- that only big cases deserve the Court's attention.  A trial judge can overwork a "large" case.  It is better to treat even "large" cases like every other case; large cases and their litigants need to know and appreciate that they are not the only case on the court's docket, and realize that the scarcity of judicial resources applies to them too.

Kerns v. Bd. of Comm'rs, 888 F. Supp. 2d at 1222 n.35.

remand a case to the district court for further consideration when the district court has given cursory treatment to the clearly established prong of the qualified immunity analysis.  See Kerns v. Bader, 663 F.3d at 1182.

        **2.**        **Clearly Established Rights in the Qualified Immunity Analysis.**

To determine whether a right was clearly established, a court must consider whether the right was sufficiently clear that a reasonable government employee in the defendant's shoes would understand that what he or she did violated that right.  See Casey v. W. Las Vegas Indep. Sch. Dist., 473 F.3d 1323, 1327 (10th Cir. 2007).  "A clearly established right is generally defined as a right so thoroughly developed and consistently recognized under the law of the jurisdiction as to be 'indisputable' and 'unquestioned.'"  Lobozzo v. Colo. Dep't of Corr., 429 F. App'x 707, 710 (10th Cir. 2011)(unpublished)[7](quoting Zweibon v. Mitchell, 720 F.2d 162, 172-73 (D.C. Cir. 1983)).

"Ordinarily, in order for the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains."  Currier v. Doran, 242 F.3d

---

[7]Lobozzo v. Colorado Department of Corrections is an unpublished opinion, but the Court can rely on an unpublished opinion to the extent its reasoned analysis is persuasive in the case before it.  See 10th Cir. R. 32.1(A) ("Unpublished opinions are not precedential, but may be cited for their persuasive value.").  The Tenth Circuit has stated:

> In this circuit, unpublished orders are not binding precedent, . . . and we have generally determined that citation to unpublished opinions is not favored. However, if an unpublished opinion or order and judgment has persuasive value with respect to a material issue in a case and would assist the court in its disposition, we allow a citation to that decision.

United States v. Austin, 426 F.3d 1266, 1274 (10th Cir. 2005)(citations omitted).  The Court finds that Lobozzo v. Colorado Department of Corrections and Muller v. Culbertson, 408 F. App'x 194 (10th Cir. 2011)(unpublished), have persuasive value with respect to material issues, and will assist the Court in its preparation of this Memorandum Opinion and Order.

at 923.  On the other hand, the Supreme Court has observed that it is generally not necessary to find a controlling decision declaring the "very action in question . . . unlawful." Anderson v. Creighton, 483 U.S. 635, 640 (1987).  "In determining whether the right was 'clearly established,' the court assesses the objective legal reasonableness of the action at the time of the alleged violation and asks whether 'the contours of the right [were] sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" Holland ex rel. Overdorff v. Harrington, 268 F.3d 1179, 1186 (10th Cir. 2001)(alteration in original)(quoting Saucier v. Katz, 533 U.S. at 202).  A court should inquire "whether the law put officials on fair notice that the described conduct was unconstitutional" rather than engage in "a scavenger hunt for cases with precisely the same facts." Pierce v. Gilchrist, 359 F.3d 1279, 1298 (10th Cir. 2004).

The Supreme Court has clarified that the clearly established prong of the qualified immunity test is a very high burden for the plaintiff: "A Government official's conduct violates clearly established law when, at the time of the challenged conduct, the contours of a right are sufficiently clear that every reasonable official would have understood that what he is doing violates that right." Ashcroft v. al-Kidd, 131 S. Ct. at 2083.  "In other words, 'existing precedent must have placed the statutory or constitutional question beyond debate.'" Reichle v. Howards, 132 S. Ct. at 2093 (quoting Ashcroft v. al-Kidd, 131 S. Ct. at 2083).  "The operation of this standard, however, depends substantially upon the level of generality at which the relevant 'legal rule' is to be identified." Anderson v. Creighton, 483 U.S. at 639.  "The general proposition, for example, that an unreasonable search or seizure violates the Fourth Amendment is of little help in determining whether the violative nature of particular conduct is clearly established." Ashcroft v. al-Kidd, 131 S. Ct. at 2084.  The level of generality at which the legal rule is defined

is important, because qualified immunity shields officers who have "reasonable, but mistaken beliefs" as to the application of law to facts and operates to protect officers from the sometimes "hazy border[s]" of the law.  Saucier v. Katz, 533 U.S. at 205.

The Tenth Circuit held in Kerns v. Bader that, although "a case on point isn't required if the impropriety of the defendant's conduct is clear from existing case law," the law is not clearly established where "a distinction might make a constitutional difference."  663 F.3d at 1188 (emphasis in original).  In Kerns v. Bader, dealing with the search of a home, the Tenth Circuit explained that the relevant question "wasn't whether we all have some general privacy interest in our home," but "whether it was beyond debate in 2005 that the officers' entry and search lacked legal justification."  663 F.3d at 1183 (emphasis added).  Earlier Tenth Circuit cases, clarifying the level of generality at which a legal rule must be defined, applied a sliding scale to determine when the law is clearly established.  See Casey v. City of Fed. Heights, 509 F.3d 1278, 1284 (10th Cir. 2007)("The more obviously egregious the conduct in light of prevailing constitutional principles, the less specificity is required from prior case law to clearly establish the violation.").  "[W]hen an officer's violation . . . is particularly clear . . . , [the Tenth Circuit] does not require a second decision with greater specificity to clearly establish the law."  Casey v. City of Fed. Heights, 509 F.3d at 1284.  Furthermore, "general statements of the law are not inherently incapable of giving fair and clear warning . . . ."  Hope v. Pelzer, 536 U.S. 730, 741 (2002).

## LAW REGARDING SUBSTANTIVE DUE-PROCESS CLAIMS

The Fourteenth Amendment's Due Process Clause provides that "no State shall . . . deprive any person of life, liberty, or property without due process of law."  U.S. Const. amend. XIV, § 1.  In general, state actors may be held liable under § 1983 only for their own affirmative acts that violate a plaintiff's due process rights and not for third parties' acts.  See Robbins v.

Oklahoma, 519 F.3d at 1251 (citing DeShaney v. Winnebago Cnty. Dep't of Soc. Servs., 489 U.S. 189, 197 (1989)("DeShaney")).  "[N]othing in the language of the Due Process Clause itself requires the State to protect the life, liberty and property of its citizens against invasion by private actors."  DeShaney, 489 U.S. at 195.  In other words, the Due Process Clause is not a guarantee of a minimal level of safety and security.  See DeShaney, 489 U.S. at 195.

### 1.     Exceptions to the General Rule.

There are, however, two exceptions to this general rule.  The first exception -- the special-relationship doctrine -- arises when the state has a custodial relationship with the victim, which triggers an affirmative duty to protect that individual.  See Christiansen v. City of Tulsa, 332 F.3d 1270, 1280 (10th Cir. 2003); Graham v. Indep. Sch. Dist. No. 1-89, 22 F.3d at 994-95. The second exception -- the danger-creation theory -- provides that a state may also be liable for an individual's safety "only when 'a state actor affirmatively acts to create, or increases a plaintiff's vulnerability to, or danger from private violence.'"  Robbins v. Oklahoma, 519 F.3d at 1251 (quoting Currier v. Doran, 242 F.3d at 923).  "If either the special-relationship or danger-creation exception applies, the conduct of the state actor must go beyond negligence to the point of 'shocking the conscience.'"  Glover v. Gartman, 899 F. Supp. 2d at 1135 (citing Johnson ex rel. Estate of Cano v. Holmes, 455 F.3d 1133, 1142 (10th Cir. 2006)("The shocks the conscience standard applies to both types of suits.")).

### 2.     The Special-Relationship Doctrine.

The first exception to the general principle that a state's negligent failure to protect an individual cannot trigger liability under the Due Process Clause is the special-relationship doctrine.  A plaintiff must show that they were involuntarily committed to state custody to establish a duty to protect under the special-relationship doctrine.  See Liebson v. N.M. Corr.

Dep't, 73 F.3d 274, 276 (10th Cir. 1996).  "A special relationship exists when the state assumes control over an individual sufficient to trigger an affirmative duty to provide protection to that individual (e.g. when the individual is a prisoner or involuntarily committed mental patient)." Uhlrig v. Harder, 64 F.3d at 572.

### 3.    The Danger-Creation Exception.

The Due Process Clause protects against "deliberately wrongful government decisions rather than merely negligent government conduct."   Uhlrig v. Harder, 64 F.3d at 573.   The danger-creation exception to this rule applies only when "a state actor affirmatively acts to create, or increases a plaintiff's vulnerability to, or danger from private violence."   Currier v. Doran, 242 F.3d at 923.   See Estate of B.I.C. v. Gillen, 702 F.3d 1182, 1187 (10th Cir. 2012) ("[S]tate officials can be liable for the acts of private parties where those officials created the very danger that caused the harm.").   Under a danger-creation theory, there is no § 1983 liability absent "an intent to harm" or "an intent to place a person unreasonably at risk of harm."   Uhlrig v. Harder, 64 F.3d at 573.  A plaintiff must show "sufficient[] 'affirmative conduct on the part of the state in placing the plaintiff in danger.'"   Estate of B.I.C. v. Gillen, 702 F.3d at 1187 (quoting Gray v. Univ. Colo. Hosp. Auth., 672 F.3d 909, 916 (10th Cir. 2012)).   To state a prima-facie case, the plaintiff must show that his or her danger-creation claim for due-process violations meets a six-part test: (i) the state and individual actors must have created the danger or increased the plaintiff's vulnerability to the danger in some way; (ii) the plaintiff must be a member of a limited and specifically definable group; (iii) the defendant's conduct must put the plaintiff at substantial risk of serious, immediate, and proximate harm; (iv) the risk must be obvious and known; (v) and the defendant must have acted recklessly in conscious disregard of that risk.  See

Pena v. Greffet, 922 F. Supp. 2d 1187, 1227 (D.N.M. 2013)(Browning, J.)(citing Rost ex rel. K.C. v. Steamboat Springs RE-2 Sch. Dist., 511 F.3d 1114, 1126 (10th Cir. 2008)).

In determining whether the danger-creation exception applies, the Tenth Circuit has focused on the deliberateness of the conduct in relation to the caused harm.  See Christiansen v. City of Tulsa, 332 F.3d at 1281.  The defendant must recognize the unreasonableness of the risk of the conduct and act "with an intent to place a person unreasonably at risk."  Medina v. City & Cnty. of Denver, 960 F.2d 1493, 1496 (10th Cir. 1992), overruled on other grounds by Morris v. Noe, 672 F.3d 1185 (10th Cir. 2012).  The intent to place a person unreasonably at risk is present where the defendant "is aware of a known or obvious risk" creating a high probability that serious harm will follow, and the defendant nonetheless proceeds with a "conscious and unreasonable disregard of the consequences."  Medina v. City & Cnty. of Denver, 960 F.2d at 1496.

> 4.      **What Shocks the Conscience.**

A government actor's official conduct intended to injure in a way that cannot reasonably be justified by any government interest most likely shocks the conscience.  See Cnty. of Sacramento v. Lewis, 523 U.S. 833, 849 (1998)("[C]onduct intended to injure in some way unjustifiable by any government interest is the sort of official action most likely to rise to the conscience-shocking level.").  "[A] plaintiff must do more than show that the government actor intentionally or recklessly caused injury to the plaintiff by abusing or misusing government power."  Camuglia v. City of Albuquerque, 448 F.3d 1214, 1222 (10th Cir. 2006)(quoting Moore v. Guthrie, 438 F.3d 1036, 1040 (10th Cir. 2006))(internal quotation marks omitted).  "The plaintiff must demonstrate a degree of outrageousness and a magnitude of potential or actual

harm that is truly conscience shocking." Camuglia v. City of Albuquerque, 448 F.3d at 1222-23

(quoting Uhlrig v. Harder, 64 F.3d at 574)(internal quotation marks omitted).

> Establishing these limits advances "three basic principles highlighted by the Supreme Court in evaluating substantive due process claims: (1) the need for restraint in defining their scope; (2) the concern that § 1983 not replace state tort law; and (3) the need for deference to local policymaking bodies in making decisions impacting upon public safety."

Camuglia v. City of Albuquerque, 448 F.3d at 1223 (quoting Uhlrig v. Harder, 64 F.3d at 574).

"Whether the conduct shocks the conscience is an objective test, based on the circumstances, rather than a subjective test based on the government actor's knowledge." Pena v. Greffet, 922 F. Supp. 2d at 1227 (citing James v. Chavez, 830 F. Supp. 2d 1208, 1276 (D.N.M. 2011)(Browning, J.)(finding that the use of deadly force did not shock the conscience even if the suspect did not have an intent to harm the officer, because the officer "had sufficient facts before him to conclude that there was a threat of serious physical harm" and the "courts must evaluate a [government actor's] conduct objectively"), aff'd, 511 F. App'x 742 (10th Cir. 2013)).

In Martinez v. Uphoff, 265 F.3d 1130 (10th Cir. 2001), the widow of a corrections officer sued the director, deputy director, warden, and deputy wardens of the department of corrections, alleging that the defendants deliberately failed to ensure proper training and supervision of penitentiary personnel, failed to provide safe and adequate staffing, and failed to take corrective action to protect her husband, all of which resulted in him being killed during the escape of three inmates. See 265 F.3d at 1132. The district court found that the plaintiff failed to state a § 1983 claim for violation of the Due Process Clause under a danger-creation theory because the defendants' actions were "not of such a magnitude that the Court is able to conclude they shock the conscience." 265 F.3d at 1134. The Tenth Circuit agreed with the conclusion of the district

court, stating: "[U]nder the circumstances of this case, inaction in the face of known dangers or risks [was] not enough to satisfy the danger-creation theory's conscience shocking standard." 265 F.3d at 1135.

In Schaefer v. Las Cruces Public School District, the plaintiffs alleged that the defendants -- the school district, superintendent, principal, and vice principal of a middle school -- violated the plaintiffs' substantive due-process rights when they did not take sufficient action to prevent a student at the school from "racking"[8] the plaintiffs' son.  716 F. Supp. 2d at 1072-73.  The Court concluded that the defendants' conduct did not shock the conscience.  See 716 F. Supp. 2d at 1074-75.  The Court explained:

> Assuming the absolute worst from the Schaefers' alleged facts, the Defendants were aware of three instances of an unknown eighth-grade student racking various sixth-grade students within the span of a month, and failed to implement policies to improve hallway monitoring and stop this conduct from occurring in time to prevent [the plaintiffs' son] from falling victim to the same fate.  Further, the Defendants indicated to the sixth graders that it had policies in place to punish individuals that assaulted other students but did not, in fact, have such policies.
>
> While such behavior may be worthy of remedy under tort law, and perhaps worthy of punishment in the form of punitive damages, the Court's conscience is not shocked . . . .
>
> Any number of actions by the Defendants might have remedied the problem, but the Court's conscience is not shocked by the Defendants' failure to consider or implement such a policy.  Even if the Defendants knew that students frequently -- more than three times per month -- attacked other students in the halls and declined to implement safety measures to minimize that conduct, the Court is not convinced that it would rise to the level of shocking the conscience.

716 F. Supp. 2d at 1074-75.

---

[8]The parties in Schaefer v. Las Cruces Public School District defined being "racked" as being "kicked and/or punched in the testicles."  716 F. Supp. 2d at 1059 n.2 (citations omitted) (internal quotation marks omitted).

## LAW REGARDING FAILURE TO SUPERVISE AND TRAIN

The Supreme Court has made clear that there is no *respondeat superior* liability under § 1983.  See Ashcroft v. Iqbal, 556 U.S. at 676 ("Because vicarious liability is inapplicable to Bivens and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."); Bd. of Cnty. Comm'rs v. Brown, 520 U.S. at 403.  An entity cannot be held liable solely on the basis of the existence of an employer-employee relationship with an alleged tortfeasor.   See Bd. of Cnty. Comm'rs v. Brown, 520 U.S. at 403.   "[W]hen a plaintiff sues an official under § 1983 for conduct 'arising from his or her superintendent responsibilities,' the plaintiff must plausibly plead and eventually prove not only that the official's subordinates violated the Constitution, but that the official by virtue of his own conduct and state of mind did so as well."  Dodds v. Richardson, 614 F.3d at 1198.  Thus,

> § 1983 allows a plaintiff to impose liability upon a defendant-supervisor who creates, promulgates, implements, or in some other way possesses responsibility for the continued operation of a policy the enforcement (by the defendant-supervisor or her subordinates) of which "subjects, or causes to be subjected" that plaintiff "to the deprivation of any rights  . . . secured by the Constitution . . ."

Dodds v. Richardson, 614 F.3d at 1199.  A municipality cannot be held liable under § 1983 for an employee's acts if the employee committed no constitutional violation.  See Myers v. Okla. Cnty. Bd. of Cnty. Comm'rs, 151 F.3d 1313, 1316 (10th Cir. 1998); Jonas v. Board of Comm'rs of Luna County, 699 F. Supp. 2d 1284, 1302 (D.N.M. 2010)(Browning, J.).

Supervisory liability requires "proof of the municipality's deliberate indifference to its inhabitants."  Barney v. Pulsipher, 143 F.3d at 1307-08 (citations and internal quotations omitted).  See Bd. of Cnty. Comm'rs v. Brown, 520 U.S. at 404 ("[I]t is not enough for a § 1983 plaintiff merely to identify conduct properly attributable to the municipality.").   "[W]here a

municipality's failure to train its employees in a relevant respect evidences a deliberate indifference to the rights of its inhabitants, that failure to train may be properly thought of as a city policy . . . [and] is actionable under § 1983." Novitsky v. City of Aurora, 491 F.3d 1244, 1259 (10th Cir. 2007)(quoting City of Canton v. Harris, 489 U.S. 378, 389 (1989))(alterations in original, internal quotation marks omitted). "Negligence[, however,] is not a basis for liability under § 1983." Darr v. Town of Telluride, Colo., 495 F.3d 1243, 1257 (10th Cir. 2007). The Tenth Circuit has stated that "[l]iability under § 1983 must be predicated upon a *deliberate* deprivation of constitutional rights by the defendant, and not on negligence." Darr v. Town of Telluride, Colo., 495 F.3d at 1256 (emphasis in original)(internal quotation marks omitted). The Tenth Circuit has explained:

> The deliberate indifference standard may be satisfied when the municipality has actual or constructive notice that its action or failure to act is substantially certain to result in a constitutional violation, and it consciously or deliberately chooses to disregard the risk of harm. In most instances, notice can be established by proving the existence of a pattern of tortious conduct. In a narrow range of circumstances, however, deliberate indifference may be found absent a pattern of unconstitutional behavior if a violation of federal rights is a highly predictable or plainly obvious consequence of a municipality's action or inaction, such as when a municipality fails to train an employee in specific skills needed to handle recurring situations, thus presenting an obvious potential for constitutional violations[.]

Carr v. Castle, 337 F.3d 1221, 1229 (10th Cir. 2003)(quoting Barney v. Pulsipher, 143 F.3d at 1307-08). A nebulous assertion of the need for more or better training does not, however, satisfy the deliberate-indifference standard. See City of Canton v. Harris, 489 U.S. at 390-92. Instead, the plaintiff must point to specific deficiencies in the portions of the training program most closely related to the alleged constitutional violation. See City of Canton v. Harris, 489 U.S. at 390-91. The plaintiff's obligation does not stop there, however, as the plaintiff must also

show a direct causal connection between the failure to train and the violation of his constitutional rights.  See Carr v. Castle, 337 F.3d at 1231.

## LAW REGARDING SUPPLEMENTAL JURISDICTION

It is a fundamental precept of American law that the federal courts are "courts of limited jurisdiction."  Exxon Mobil Corp. v. Allapattah Servs., Inc., 545 U.S. 546, 552 (2005).  Federal courts "possess only that power authorized by Constitution and statute."  Kokkonen v. Guar. Life Ins. Co. of Am., 511 U.S. 375, 377 (1994).  Among the powers that Congress has bestowed upon the courts is the power to hear controversies arising under federal law -- federal-question jurisdiction -- and controversies arising between citizens of different states -- diversity jurisdiction.  See 28 U.S.C. §§ 1331-32.

### 1.      Congressional Authority.

Although a statutory basis is necessary for federal courts to exercise jurisdiction over a controversy, "it is well established -- in certain classes of cases -- that, once a court has original jurisdiction over some claims in the action, it may exercise supplemental jurisdiction over additional claims that are part of the same case or controversy."  Exxon Mobil Corp. v. Allapattah Servs., Inc., 545 U.S. at 552.  The term "supplemental jurisdiction" is now used to refer collectively to the common-law doctrines of ancillary jurisdiction,[9] pendent jurisdiction,[10]

---

[9]Ancillary jurisdiction is a "court's jurisdiction to adjudicate claims and proceedings related to a claim that is properly before the court."  Black's Law Dictionary 928 (9th ed. 2009).

[10]Pendent jurisdiction is a "court's jurisdiction to hear and determine a claim over which it would not otherwise have jurisdiction, because the claim arises from the same transaction or occurrence as another claim that is properly before the court."  Black's Law Dictionary 930 (9th ed. 2009).

and pendent-party jurisdiction.[11]   28 U.S.C. § 1367, statutorily codifying Owen Equip. & Erection Co. v. Kroger, 437 U.S. 365 (1978)(outlining the doctrine of ancillary jurisdiction), and United Mine Workers of Am. v. Gibbs, 383 U.S. 715 (1966)(outlining the doctrine of pendent jurisdiction), and invalidating Finley v. United States, 490 U.S. 545 (1989)(rejecting the doctrine of pendent-party jurisdiction).  Federal courts may exercise pendent jurisdiction over state law claims when "state and federal claims . . . derive from a common nucleus of operative fact." United Mine Workers v. Gibbs, 383 U.S. at 725.  Supplemental jurisdiction gives federal courts the flexibility to hear a cause of action after the introduction of third parties whose insertion into the litigation lacks support of any independent grounds for federal jurisdiction, when those parties share a common interest in the outcome of the litigation and are logical participants in it.  See Owen Equip. & Erection Co. v. Kroger, 437 U.S. at 375 n.18.

In 1988, the Honorable William H. Rehnquist, then-Chief Justice of the United States, created the Federal Courts Study Committee to analyze the federal court system and to recommend reforms.  See James v. Chavez, No. CIV 09-0540 JB/CG, 2011 WL 6013547, at *5 (D.N.M. Nov. 21, 2011)(Browning, J.)(citing 16 James W. Moore et al., Moore's Federal Practice § 106.04[5] (Matthew Bender 3d ed.)).   In response to the Committee's findings regarding pendent, ancillary, and pendent-party jurisdiction, Congress codified the doctrines when it passed the Judicial Improvements Act of 1990:

> [I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States

---

[11]Pendent-party jurisdiction is a "court's jurisdiction to adjudicate a claim against a party who is not otherwise subject to the court's jurisdiction, because the claim by or against that party arises from the same transaction or occurrence as another claim that is properly before the court." Black's Law Dictionary 930 (9th ed. 2009).

Constitution.  Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.

28 U.S.C. § 1367(a).  In enacting 28 U.S.C. § 1367, Congress conferred upon federal district courts "supplemental forms of jurisdiction . . . [that] enable them to take full advantage of the rules on claim and party joinder to deal economically -- in single rather than multiple litigation -- with matters arising from the same transaction or occurrence."  Report of the Federal Courts Study Committee, Part II.2.B.2.b. (April 2, 1990), reprinted in 22 Conn. L. Rev. 733, 787 (1990).

## 2. **District Court Discretion.**

The Tenth Circuit has followed the Supreme Court's lead in classifying supplemental jurisdiction, not as a litigant's right, but as a matter of judicial discretion.  See Estate of Harshman v. Jackson Hole Mountain Resort Corp., 379 F.3d 1161, 1165 (10th Cir. 2004)(citing City of Chi. v. Int'l Coll. of Surgeons, 522 U.S. 156, 173 (1997)).  In circumstances where the supplemental jurisdiction statute may support supplemental jurisdiction, the district court retains discretion to decline to exercise that jurisdiction.  The traditional analysis, based on the Supreme Court's opinion in United Mine Workers v. Gibbs, compelled courts to consider "judicial economy, convenience and fairness to litigants" when deciding whether to exercise supplemental jurisdiction.  383 U.S. at 726.  Similarly, Congress' supplemental jurisdiction statute enumerates four factors that the court should consider:

(1)     the claim raises a novel or complex issue of State law,

(2)     the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,

(3)     the district court has dismissed all claims over which it has original jurisdiction, or

(4)      in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c).   In applying these factors, district courts should seek to exercise supplemental jurisdiction in an effort to "vindicate values of economy, convenience, fairness, and comity."  Estate of Harshman v. Jackson Hole Mountain Resort Corp., 379 F.3d at 1164.

Numerous courts have acknowledged that 28 U.S.C. § 1367(c) necessarily changed the district courts' supplemental jurisdiction discretion analysis and that, unless one of the conditions of 28 U.S.C. § 1367(c) exists, courts are not free to decline jurisdiction.  See Itar-Tass Russian News Agency v. Russian Kurier, Inc., 140 F.3d 442, 447 (2d Cir. 1998)("[S]ection 1367 has indeed altered Gibbs' discretionary analysis."); McLaurin v. Prater, 30 F.3d 982, 985 (8th Cir. 1994)("The statute plainly allows the district court to reject jurisdiction over supplemental claims only in the four instances described therein."); Exec. Software N. Am. v. U.S. Dist. Court, 24 F.3d 1545, 1557 (9th Cir. 1994)("By codifying preexisting applications of Gibbs in subsections (c)(1)-(3), however, it is clear that Congress intended the exercise of discretion to be triggered by the court's identification of a factual predicate that corresponds to one of the section 1367(c) categories."), overruled on other grounds by Cal. Dep't of Water Res. v. Powerex Corp., 533 F.3d 1087 (9th Cir. 2008); Palmer v. Hosp. Auth., 22 F.3d 1559, 1569 (11th Cir. 1994) ("[S]upplemental jurisdiction must be exercised in the absence of any of the four factors of section 1367(c)."); Bonadeo v. Lujan, No. CIV 08-0812 JB/ACT, 2009 WL 1324119, at *8 (D.N.M. Apr. 30, 2009)(Browning, J.)("28 U.S.C. § 1367(c) changed the district courts' supplemental jurisdiction discretion analysis to prohibit courts from declining jurisdiction unless one of the conditions of 28 U.S.C. § 1367(c) exists.").   At least one other district court in the Tenth Circuit besides this Court has reached the same conclusion.  See Gudenkauf v. Stauffer Commc'ns, Inc., 896 F. Supp. 1082, 1084 (D. Kan. 1995)(Crow, J.)("[A]ny exercise of

discretion declining jurisdiction over pendent claims or parties cannot occur until 'triggered' by the existence of one of the four conditions enumerated.").

The Tenth Circuit has held that district courts should generally decline jurisdiction over state claims when federal claims no longer remain: "When all federal claims have been dismissed, the court may, and usually should, decline to exercise jurisdiction over any remaining state claims." Koch v. Del City, 660 F.3d 1228, 1248 (10th Cir. 2011)(quoting Smith v. City of Enid ex rel. Enid City Comm'n, 149 F.3d 1151, 1156 (10th Cir. 1998)). The Supreme Court has also recognized:

> Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law. Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well.

United Mine Workers of Am. v. Gibbs, 383 U.S. at 726. The Court has previously stated that a district court should usually decline to exercise supplemental jurisdiction when one of the 28 U.S.C. § 1367(c) factors applies. See Armijo v. New Mexico, No. CIV 08-0336, 2009 WL 3672828, at *4 (D.N.M. Sept. 30, 2009)(Browning, J.). The Tenth Circuit has recognized that a district court does not "abuse [its] discretion" when it declines to exercise supplemental jurisdiction over a claim "under 28 U.S.C. § 1367(c)(3) . . . where it 'has dismissed all claims over which it has original jurisdiction.'" Muller v. Culbertson, 408 F. App'x 194, 197 (10th Cir. 2011)(unpublished)(quoting 28 U.S.C. § 1367(c)(3)). The Court has previously allowed a plaintiff to amend her complaint to add an additional federal claim, after the Court dismissed all other federal claims but did not resolve the state claims. See Young v. City of Albuquerque, No. CIV 13-1046 JB/RHS, 2014 WL 7473806, at *28-29 (Dec. 24, 2014)(Browning, J.).

3.       **Setoff Counterclaims**.

The Court lacks supplemental jurisdiction to hear setoff counterclaims unless there is an independent basis for original jurisdiction.  A setoff is a "defendant's counterdemand against the plaintiff, arising out of a transaction independent of the plaintiff's claim."   Black's Law Dictionary 1496 (9th ed. 2009).  Because a setoff concerns a different transaction, it is by definition a permissive counterclaim.  See Fed. R. Civ. P. 13 (defining compulsory counterclaims as those which "arise[] out of the transaction or occurrence that is the subject matter of the opposing party's claim," and defining a permissive counterclaim as "any claim that is not compulsory"); Williams v. W. Laundry Equip. LLC, No. CIV 06-0569 JB/RLP, 2006 WL 4061164, at *6 (D.N.M. Nov. 21, 2006)(Browning, J.)("Unlike recoupment claims, which arise from the same transaction as the principal claim, counterclaims for setoff 'provide the basis for a permissive counterclaim because setoff, by definition, does not arise from the same transaction as the original claim.'"  (alterations omitted)(quoting In re Concept Clubs, Inc., 154 B.R. 581, 587 (D. Utah 1992)(Anderson, J.))).  "Because permissive counterclaims do not arise from the same transaction or occurrence as the main claim, however, they generally do not fall within the court's supplemental jurisdiction and thus require an independent basis for federal jurisdiction." Williams v. W. Laundry Equip. LLC, 2006 WL 4061164, at *6.  If the Court lacks an independent jurisdictional basis to hear a setoff claim, the Court lacks jurisdiction to hear it, because § 1367 requires supplemental claims to "form part of the same case or controversy under Article III of the United States Constitution" as the claims over which the Court has original jurisdiction. 28 U.S.C. § 1367(a).  See James D. Hinson Elec. Contracting Co. v. Bellsouth Telecommunications, Inc., No. CIV 07-598-J-32 MCR, 2011 WL 2448911, at *3 (M.D. Fla. Mar. 28, 2011)(Corrigan, J.)("Although a set-off need not have an independent basis of

jurisdiction, it must meet the requirements of Section 1367 and thus 'form part of the same case or controversy under Article III of the United States Constitution.'"   (quoting 28 U.S.C. § 1367(a)).

## LAW REGARDING THE NMTCA

The New Mexico Legislature enacted the NMTCA, because it recognized "the inherent unfair and inequitable results which occur in the strict application of the doctrine of sovereign immunity."   N.M. Stat. Ann. § 41-4-2(A).   The New Mexico Legislature, however, also recognized

> that while a private party may readily be held liable for his torts within the chosen ambit of his activity, the area within which the government has the power to act for the public good is almost without limit, and therefore government should not have the duty to do everything that might be done.

N.M. Stat. Ann. § 41-4-2(A).   As a result, it was "declared to be the public policy of New Mexico that governmental entities and public employees shall only be liable within the limitations of the Tort Claims Act and in accordance with the principles established in that act." N.M. Stat. Ann. § 41-4-2(A).   The NMTCA is also "based upon the traditional tort concepts of duty and the reasonably prudent person's standard of care in the performance of that duty." N.M. Stat. Ann. § 41-4-2(C).

The NMTCA is the

> exclusive remedy against a governmental entity or public employee for any tort for which immunity has been waived under the Tort Claims Act and no other claim, civil action or proceeding for damages, by reason of the same occurrence, may be brought against a governmental entity or against the public employee or his estate whose act or omission gave rise to the suit or claim.

N.M. Stat. Ann. § 41-4-17(A).   A plaintiff may not sue a New Mexico governmental entity, or its employees or agents, unless the plaintiff's cause of action fits within one of the exceptions to immunity that the NMTCA grants.  See Begay v. State, 1985-NMCA-117, 723 P.2d 252, 255

("Consent to be sued may not be implied, but must come within one of the exceptions to immunity under the Tort Claims Act."), rev'd on other grounds by Smialek v. Begay, 1986-NMSC-049, 721 P.2d 1306.  A plaintiff also may not sue a governmental entity or its employees for a damage or damages claim arising out of violations of rights under the New Mexico Constitution unless the NMTCA contains a waiver of immunity.  See Barreras v. N.M. Corr. Dep't, 2003-NMCA-027, ¶ 24, 62 P.3d 770, 776 ("In the absence of affirmative legislation, the courts of this state have consistently declined to permit individuals to bring private lawsuits to enforce rights guaranteed by the New Mexico Constitution, based on the absence of an express waiver of immunity under the Tort Claims Act."); Chavez v. City of Albuquerque, 1998-NMCA-004, ¶ 8, 952 P.2d 474 (noting that a plaintiff cannot seek damages for violations of rights under the New Mexico Constitution against a city or its employees or agents unless the NMTCA waives immunity); Rubio v. Carlsbad Mun. Sch. Dist., 1987-NMCA-127, ¶ 13, 744 P.2d 919, 922 (holding that no waiver of immunity exists for damages arising out of alleged educational malpractice claim against a school board); Begay v. State, 1985-NMCA-117, ¶ 14 (finding that no waiver exists in NMTCA for suit under Article II, § 11 of the New Mexico Constitution). "Thus, if no specific waiver can be found in the NMTCA, a plaintiff's complaint against the governmental entity or its employees must be dismissed."  Salazar v. City of Albuquerque, No. CIV 10-0645 JB/ACT, 2013 WL 5554185, at *24 (D.N.M. Aug. 20, 2013)(Browning, J.)(citing Begay v. State, 1985-NMCA-117).

## ANALYSIS

The Court will grant the Motion.  The Court will dismiss Saenz' substantive due-process claim, because she fails to allege that the Defendant's affirmative conduct created a danger or that the Defendants' actions shock the conscience.  The Court will also dismiss her failure-to-

train or failure-to-supervise claim, because a failure-to-train or supervise claim requires an underlying constitutional violation. Additionally, because Manes and Brattain did not violate any clearly established constitutional rights, they are entitled to qualified immunity. Finally, because the Court will dismiss all of Saenz' federal claims, it will decline to exercise supplemental jurisdiction over her state law claims and will dismiss them without prejudice to her filing them in state court.

## I.    SAENZ FAILS TO ALLEGE A VALID SUBSTANTIVE DUE-PROCESS CLAIM.

Saenz fails to allege a valid substantive due-process claim. Saenz' Counts 1 and 3 assert a single substantive due-process violation, and allege the same cause of action. See Tr. at 8:15-9:2 (Proctor, Court)(stating that there is no difference between Counts 1 and 2). Her substantive due-process claim is based on the danger-creation theory. See Response at 6-7. This theory, however, has numerous problems when applied in this case.

The Tenth Circuit requires a plaintiff to show six factors to establish a danger-creation theory.

> When a plaintiff alleges a danger was created by the defendant, the plaintiff must demonstrate that 1) plaintiff was a member of a limited and specifically definable group; 2) defendant's conduct put plaintiff at substantial risk of serious, immediate, and proximate harm; 3) the risk was obvious or known; 4) defendant acted recklessly in conscious disregard of that risk; 5) such conduct when viewed in total, is conscience shocking; and 6) defendant created the danger or increased the plaintiff's vulnerability to the danger in some way.

Gray v. Univ. of Colo. Hosp. Auth., 672 F.3d at 920 (alterations omitted)(quoting DeAnzona v. City and Cnty. of Denver, 222 F.3d 1229, 1235 (10th Cir. 2000)). "There are also two preconditions that the plaintiff must show: that the state actor engaged in affirmative conduct and that there was private violence." Estate of B.I.C. v. Gillen, 761 F.3d 1099, 1105 (10th Cir. 2014) (internal quotation marks omitted). Here, Saenz fails to allege one of the preconditions -- that

the Defendants' affirmative conduct created the danger -- and fails to allege one of the necessary

factors -- that the Defendants' conduct shocks the conscience.

A.    SAENZ FAILS TO ALLEGE AFFIRMATIVE CONDUCT ON THE DEFENDANTS' PART.

Saenz fails to allege affirmative conduct on the Defendants' part.  The danger-creation

theory requires Saenz to show that the Defendants engaged in affirmative conduct that created

the danger or made D. Saenz more vulnerable to the danger.  See Estate of B.I.C. v. Gillen, 761

F.3d at 1105 (10th Cir. 2014); Gray v. Univ. of Colo. Hosp. Auth., 672 F.3d at 925 ("As we have

seen, 'affirmative conduct' is a necessary precondition to such application."  (quoting Graham v.

Indep. Sch. Dist. No. I-89, 22 F.3d at 995)).  The Supreme Court has explained:

> In the substantive due process analysis, it is the State's affirmative act of
> restraining the individual's freedom to act on his own behalf . . . which is the
> 'deprivation of liberty' triggering the protections of the Due Process Clause, not
> its failure to act to protect his liberty interests against harms inflicted by other
> means.

DeShaney, 489 U.S. at 200.  "'[F]oreseeability cannot create an affirmative duty to protect when

plaintiff remains unable to allege a custodial relationship.'"  Gray v. Univ. of Colo. Hosp. Auth.,

672 F.3d at 916 (quoting Graham v. Indep. Sch. Dist. No. I-89, 22 F.3d at 994).  "'[I]naction by

the state in the face of a known danger is not enough to trigger the obligation'" to protect a

plaintiff from a third party's harm.   Gray v. Univ. of Colo. Hosp. Auth., 672 F.3d at 916

(quoting Graham v. Indep. Sch. Dist. No. I-89, 22 F.3d at 995).  Thus, if the Defendants "were

aware of the risk, expressly promised to eliminate the risk, and failed to do so," there is no

constitutional violation unless they affirmatively created the danger which harmed D. Saenz.

Gray v. Univ. of Colo. Hosp. Auth., 672 F.3d at 925.

Here, Saenz has alleged that the Defendants' failure to act resulted in D. Saenz' death.

She does not allege that any affirmative act on the part of the Defendants created the danger

which caused D. Saenz' death.  First, Saenz does not allege in the Complaint what dangerous condition was in the parking lot other than the conclusory statement "that the Lovington High School's parking lot was in a dangerous condition."  Complaint ¶ 18, at 4-5.  In ruling on a 12(b)(6) motion, the Court should not consider conclusory statements that merely recite the necessary elements of a cause of action.  See Ashcroft v. Iqbal, 556 U.S. at 678.  Based solely on the Complaint's allegations, the Court should grant the Motion, because Saenz alleges only conclusory statements to show an essential element to her cause of action -- a dangerous condition.

Second, the only statement in the Complaint concerning the Defendants' conduct in creating the danger is the conclusory statement that "the Lovington School District had done nothing to prevent the dangerous condition created by the negligence of the school district and its employees."  Complaint ¶ 18, at 5.  Once again, Saenz merely recites the elements of her cause of action -- that the Defendants created the dangerous condition -- without alleging how they created the condition.  This statement, thus, fails the Iqbal/Twombly pleading standards, and the Court should grant the Motion because Saenz' pleading is inadequate.  Additionally, Saenz alleges that the Defendants' negligence created the danger.  See Complaint ¶ 15, at 5 (stating that the Defendants "allowed the negligent operation and maintenance of the Lovington High School parking lot which created a dangerous condition"); id. ¶ 19, at 5 (stating that "the dangerous condition [was] created by the negligence of the school district and its employees").  The Tenth Circuit requires a defendant's affirmative conduct to create the danger; negligence or inaction does not constitute affirmative conduct.  See Estate of B.I.C. v. Gillen, 710 F.3d 1168, 1173 (10th Cir. 2013)("There is, however, a question as to whether there is sufficiently affirmative conduct on the part of the state in placing the plaintiff in danger.  Our precedents consistently conclude

that mere negligence or inaction is not enough."  (citation omitted)(internal quotation marks omitted)).  Saenz alleges that the Defendants' negligence -- and not their affirmative conduct -- created the dangerous condition.  As such, she fails to sufficiently state a danger-creation claim.

Third, even if the Court permitted Saenz to amend the Complaint and allege more specific facts, her claim would still fail.  At the hearing, Saenz stated that the dangerous condition was that the parking lot lacked stop signs, painted lines directing students which way they should drive, and adult supervision.  See Tr. at 19:11-14 (Proctor); id. at 20:19-21:15 (Proctor, Court).  As the Court noted at the hearing, however, the only important fact is the lack of supervision, and not the lack of stop signs and painted lines.  See Tr. at 24:8-10 (Court)("So the stop signs, and the lines really aren't important.  What's important is the fact there was no adult supervision.").  Saenz asserted that D. Saenz was killed while "horsing around" with another student by standing on the running board of a car, and the driver of the car either started doing doughnuts or started driving off.  Tr. at 24:6-7 (Proctor).  The danger-creation theory requires a causal link between the danger that the defendant's affirmative conduct created and the plaintiff's injury.  See Gray v. Univ. of Colo. Hosp. Auth., 672 F.3d at 916-17 ("We also recognized the unremarkable proposition that a complaint seeking recovery under § 1983 based on the state-created danger theory must allege a sufficient *causal link* between the danger created by an affirmative act of the State and the harm inflicted upon the victim by a private party . . . ." (emphasis in original)).  Stop signs and painted lines would not have prevented D. Saenz' death; only supervision might have.  Saenz' danger-creation claim, accordingly, stands on the Defendants' failure to supervise the parking lot.  Failure to supervise, however, is inaction, and not an affirmative action.  Inaction is insufficient to establish a danger-creation claim.  See Estate

of B.I.C. v. Gillen, 710 F.3d at 1173 ("Our precedents consistently conclude that mere negligence or inaction is not enough.").

Consequently, Saenz' Complaint fails to satisfy federal pleading standards to state a danger-creation cause of action. Additionally, even if she sufficiently alleged all of the additional facts that she asserted at the hearing, her cause of action would fail, because it rests on the Defendants' inaction or negligence, and not on their affirmative conduct.

**B.   THE DEFENDANTS' CONDUCT DOES NOT SHOCK THE CONSCIENCE.**

The Defendants' conduct does not shock the conscience. "Whether the conduct shocks the conscience is an objective test, based on the circumstances, rather than a subjective test based on the government actor's knowledge." Pena v. Greffet, 922 F. Supp. 2d at 1227. The Tenth Circuit considers three factors in determining if a defendant's conduct shocks the conscience: "(1) the need for restraint in defining the scope of substantive due process claims; (2) the concern that § 1983 not replace state tort law; and (3) the need for deference to local policymaking bodies in making decisions impacting public safety." Ruiz v. McDonnell, 299 F.3d 1173, 1184 (10th Cir. 2002). Here, the Defendants' conduct in not supervising the parking lot, and in maintaining a parking lot that lacked stop signs and painted lines, does not shock the Court's conscience, even in light of the Defendants' knowledge that the parking lot was dangerous.

The Defendants do not allege why Manes and Brattain believed that the parking lot was dangerous. Assuming the worst -- that previous incidents had occurred in the parking lot -- the Defendants' decision to not supervise the parking lot, and to not build stop signs or paint lines, does not shock the conscience. Knowledge of prior incidents does not cause the Defendants' actions to shock the conscience. In Schaefer v. Las Cruces Public School District, the Court held that the defendants' conduct did not shock the conscience when they failed to take steps to

protect a student from being racked by other students, even though the defendants (i) were aware

of other racking incidents; (ii) knew that the racking could be considered sexual assault; and

(iii) identified the student as a racking victim.  See 716 F. Supp. at 1075.  The Court noted:

> The Tenth Circuit has stated, however, that the "shocks the conscience" standard
> requires "a high level of outrageousness," Camuglia v. the City of Albuquerque,
> 448 F.3d at 1223, requiring something more than negligent, reckless, or even
> intentional conduct, [s]ee id. at 1222.  "[T]he plaintiff must demonstrate a degree
> of outrageousness and a magnitude of potential or actual harm that is truly
> conscience shocking."  Uhlrig v. Harder, 64 F.3d at 574.

Schaefer v. Las Cruces Pub. Sch. Dist., 716 F. Supp. 2d at 1075.  There, the Court found that,

even though the defendants were aware of prior incidents, their conduct was not sufficiently

outrageous to meet the shocks-the-conscience standard.  See 716 F. Supp. at 1075.

Here, the Defendants' conduct is not sufficiently outrageous to shock the conscience.

Despite Saenz' contentions, the parking lot, by itself, does not appear inherently dangerous.  It

appears that the parking lot is an ordinary parking lot.  Saenz contends that, at the time of the

accident, the parking lot lacked painted lines to direct traffic and lacked stop signs.  Painted lines

directing traffic and stop signs are not needed in a parking lot, and many parking lots lack such

safety measures.  Saenz' case, however, centers on the facts that the parking lot was crowded

with high school students and lacked adult supervision.  It is not uncommon for high school

students to drive and park cars without adult supervision.  The State of New Mexico allows,

subject to certain restrictions, fifteen-and-a-half-year-old teenagers to drive cars without adult

supervision.  See N.M. Stat. Ann. § 66-5-8.  It is not, thus, outrageous that high-school-age

students would drive and park their cars without adult supervision.  The Defendants may have

been negligent -- or even reckless because of prior incidents -- in not supervising the parking lot,

but failing to supervise a parking lot full of high school drivers is not so outrageous that it shocks

the conscience.

## II.     SAENZ FAILS TO ALLEGE A FAILURE-TO-TRAIN OR SUPERVISE CAUSE OF ACTION.

Saenz fails to allege a failure to train or supervise cause of action.  Her claim contains two fatal flaws: (i) there is no underlying constitutional violation; and (ii) she makes only conclusory allegations.

First, as the Court has previously held, the Defendants' did not violate D. Saenz' constitutional rights.  Saenz' pleadings are inadequate; she does not allege that the Defendants' affirmative conduct created a danger or made D. Saenz more vulnerable to danger; and the Defendants' conduct does not shock the conscience.  At the hearing, Saenz clarified that her failure-to-train and failure-to-supervise claim is against only the Lovington School District and the Lovington Board of Education, and not against Manes and Brattain.  See Tr. at 9:3-17 (Proctor, Court).[12]  A municipal entity's liability requires an underlying constitutional violation.

> Without a constitutional violation, the municipal liability claim fails.  See Jiron v. City of Lakewood, 392 F.3d 410, 419 n.8 (10th Cir. 2004)("[W]hen a finding of qualified immunity is based on a conclusion that the officer has committed no constitutional violation -- i.e., the first step of the qualified immunity analysis -- a finding of qualified immunity does preclude the imposition of municipal liability.")(emphasis in original); Sanchez v. City of Albuquerque, No. CIV 12-1161 JB/KBM, 2014 WL 1953499, at *17 (D.N.M. Apr. 30, 2014) (Browning, J.)("Because Sanchez has failed to establish that a municipal employee, specifically an Albuquerque police officer, violated his constitutional rights, his municipal liability claim must fail."); Chavez v. Cnty. of Bernalillo, No. CIV 13-0309 JB/LFG, 3 F. Supp. 3d 936, 948 (D.N.M. 2014) (Browning, J.)("Without a constitutional violation, the Court concludes that Chavez cannot maintain a municipal liability claim."); Garcia v. Casuas, No. CIV 11-0011 JB/RHS, 2011 WL 7444745 (D.N.M. Dec. 8, 2011) (Browning, J.)("[B]ecause Garcia failed to prove an underlying constitutional violation by Casaus, the City of Rio Rancho is entitled to summary judgment on Garcia's municipal liability."); Lovelace v. Cnty. of Lincoln, No. CIV 10-0763 JB/WPL, 2011 WL 2731179, at *14 n.6 (D.N.M. June 30, 2011)(Browning, J.) ("Without an underlying constitutional violation, no municipal liability exists.").

---

[12]The Complaint states only that the Lovington School District and the Lovington Board of Education failed to train or supervise.  See Complaint ¶¶ 40-45, at 9-11.

<u>J.H. ex rel. J.P. v. Nation</u>, No. CIV 12-0128 JB/LAM, 2015 WL 403596, at *33 (D.N.M. Jan. 19, 2015)(Browning, J.).   Similarly, a failure-to-train or failure-to-supervise claim requires an underlying constitutional violation.

> Since the plaintiff has failed to state a constitutional claim at all, her claims against the other defendants for supervisory liability and for failure to train fail. <u>See</u> <u>City of Canton v. Harris</u>, 489 U.S. 378, 391 . . . (1989)(The city's constitutional liability for failure to train or for inadequately training its employees is premised on there being an underlying constitutional violation of the harmed individual's rights.); <u>Maldonado-Denis v. Castillo-Rodriguez</u>, 23 F.3d 576, 581-82 (1st Cir. 1994)(To establish supervisory liability, the plaintiff must show an underlying constitutional violation.).

<u>Rivera v. Rhode Island</u>, 402 F.3d 27, 38-39 (1st Cir. 2005).   The Court has already concluded that there was no underlying constitutional violation.   Because there was no underlying violation, the Lovington School District and the Lovington Board of Education cannot be liable, and Saenz' failure-to-train and supervise claim must fail.

Saenz argues that, in <u>Glover v. Gartman</u>, the Court dismissed the claims against the individual defendants, but permitted the failure-to-train claim to survive against a state entity. <u>See</u> Tr. at 35:13-23 (Proctor); <u>id.</u> at 36:8-23 (Proctor, Court).   Saenz is mistaken.   In <u>Glover v. Gartman</u>, the plaintiff sued four individuals and the Lea County Detention Center for not preventing a state inmate from committing suicide.   <u>See</u> 899 F. Supp. 2d at 1115, 1124.   Two individual defendants moved to dismiss the plaintiff's claims against them, which the Court did. <u>See</u> 899 F. Supp. at 1154-55.   After dismissing two of the individual defendants, two more remained, and no other defendant moved to dismiss the plaintiff's claims against them.   The case was resolved when the remaining defendants and the plaintiff settled out of court.   <u>See</u> <u>Glover v. Gartman.</u>, No. CIV 11-0752 JB/LAM, Stipulated Order Dismissing Plaintiff's Third Amended Complaint for Damages, filed June 12, 2013 (Doc. 74).   The Court did not permit a failure-to-train cause of action to go forward against a state entity without an underlying violation.   To the

contrary, individual defendants remained in the case, and the state entity never moved for the Court to dismiss the plaintiff's claims against it.  The Court's rulings in <u>Glover v. Gartman</u> are not at odds with the longstanding rule that a municipality's liability and a failure-to-train or failure-to-supervise claim cannot stand without an underlying constitutional violation.

Second, Saenz does not state what training or supervision the Defendants failed to give employees or how that failure caused D. Saenz' death.  A failure-to-train cause of action requires a plaintiff to "point to specific deficiencies in the portions of the training program most closely related to the alleged constitutional violation," and to "show a direct causal connection between the failure to train and the violation of his constitutional rights."  <u>Lovelace v. Cnty. of Lincoln</u>, No. CIV 10-0763 JB/WPL, 2011 WL 2731179, at *8 (D.N.M. June 30, 2011)(Browning, J.).  The United States Court of Appeals for the Third Circuit has stated:

> "[S]tringent standards of culpability and causation must be applied" when an injury is caused by an employee rather than the municipality.  <u>Reitz[ v. Cnty. of Bucks]</u>, 125 F.3d [139,] 145 [(3d Cir. 1997)].  Thus, "[a] plaintiff pressing a § 1983 claim must identify a failure to provide specific training that has a causal nexus with their injuries and must demonstrate that the absence of that specific training can reasonably be said to reflect a deliberate indifference to whether the alleged constitutional deprivations occurred."  <u>Id.</u>

<u>Pahler v. City of Wilkes-Barre</u>, 31 F. App'x 69, 72 (3d Cir. 2002)(unpublished).

Here, Saenz alleges that the Lovington School District and the Lovington Board of Education failed to train and supervise its employees, which caused D. Saenz' death.  <u>See</u> Complaint ¶¶ 41-45, at 9-11.  She does not allege what training the Defendants should have given or how that training caused D. Saenz' death.  Similarly, she does not allege how the lack of supervision caused D. Saenz' death.  Accordingly, Saenz' Complaint lacks the necessary factual allegations to state a failure-to-train or failure-to-supervise cause of action.  Moreover, Saenz alleges that no school official or employee was supervising the parking lot at the time of the

accident.  It is hard to imagine how any additional training or supervision of school personnel and employees could have prevented D. Saenz' death when no school employees were present during her death; what Saenz really wants is an adult present -- someone whom the Lovington School District did not provide.  It is not a failure of training, but a conscious decision not to provide personnel.  Not only is Saenz' Complaint inadequate, it is likely that there are no facts which she could add to support her failure-to-train or failure-to-supervise claim.  Because there is no underlying constitutional violation, and because Saenz' Complaint lacks necessary factual allegations, the Court will dismiss her failure-to-train or failure-to-supervise claim.

## III.    **MANES AND BRATTAIN ARE ENTITLED TO QUALIFIED IMMUNITY.**

Manes and Brattain are entitled to qualified immunity.  To overcome qualified immunity, Saenz must show: (i) that the Defendants' actions violated her constitutional or statutory rights; and (ii) that the rights were clearly established at the time of the alleged misconduct.  See Riggins v. Goodman, 572 F.3d at 1107.  The Court has already concluded that the Defendants did not violate any of D. Saenz' constitutional rights.  Accordingly, Saenz fails the first prong, and Manes and Brattain are entitled to qualified immunity.

Saenz also fails the second prong.  The Tenth Circuit has stated that, "[o]rdinarily, in order for the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains."  Currier v. Doran, 242 F.3d at 923.  At the hearing, Saenz stated that she could not find any cases applying substantive due process to school parking lots and that Schaefer v. Las Cruces Public School District, which involved hazing, was the only case she found involving high school facilities.  See Tr. at 54:19-25 (Proctor, Court).  She admitted, however, that Schaefer v. Las Cruces Public School District was different than the

- 66 -

current case.  See Tr. at 55:2 (Proctor).  In any case, Schaefer v. Las Cruces Public School District is not a Tenth Circuit or Supreme Court case; it is the Court's case, and it goes against Saenz on the merits.  Saenz has been unable to identify, and the Court has been unable to find, a Tenth Circuit or Supreme Court case stating that school officials have a duty to supervise high school parking lots to prevent students from injuring each other.  Because there is no case on point that would have alerted Manes and Brattain that their conduct was unconstitutional and violated due process, the law was not clearly established at the time of the accident. Consequently, Manes and Brattain are entitled to qualified immunity.

## IV.   THE COURT WILL DISMISS SAENZ' STATE LAW CLAIMS WITHOUT PREJUDICE.

The Court will dismiss Saenz' state law claims without prejudice.  The Court has dismissed all of Saenz' federal claims -- the only claims over which it had original jurisdiction. The Tenth Circuit has stated: "When all federal claims have been dismissed, the court may, and usually should, decline to exercise jurisdiction over any remaining state claims."  Koch v. Del City, 660 F.3d at 1248 (quoting Smith v. City of Enid ex rel. Enid City Comm'n, 149 F.3d at 1156).  See Brooks v. Gaenzle, 614 F.3d 1213, 1229 (10th Cir. 2010)("[The Tenth Circuit has] generally held that if federal claims are dismissed before trial, leaving only issues of state law, the federal court should decline the exercise of jurisdiction by dismissing the case without prejudice." (quoting Bauchman v. W. High Sch., 132 F.3d 542, 549 (10th Cir.1997)(alterations omitted)(internal quotation marks omitted)).  Resolving the remaining state claims would require the Court to unnecessarily make decisions of state law.  As the Supreme Court stated:

> Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law. Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well.

United Mine Workers of Am. v. Gibbs, 383 U.S. at 726.

Saenz wants to remain in federal court, because her counsel, who has had success in federal court in Albuquerque, see Ysasi v. Brown, No. CIV 13-0183 JB/CG, 2015 WL 403930 (D.N.M. Jan. 7, 2015)(Browning), perceives it to be a more friendly forum than state court in Lea county, for two reasons.  One, they think the jury panel in Albuquerque, New Mexico, is more liberal than the juries in Lea county.  Two, the Court wrote C.H. v. Los Lunas Schools Board of Education, which was a broad reading of § 41-4-6.  While these may be good strategy reasons for Saenz' preference, these two reasons actually counsel that the remaining case should be in state court.  If § 41-4-6 should be read to allow a state tort claim in this case, and C.H. v. Los Lunas Schools Board of Education is used to justify that decision, the state court -- not federal court -- should decide that issue of state law.  The Court will thus dismiss Saenz' state law claims without prejudice to her filing them in state court.

**IT IS ORDERED** that the Defendant's [sic] Motion to Dismiss and for Qualified Immunity, filed January 12, 2014 (Doc. 8), is granted.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Max Houston Proctor
Hobbs, New Mexico

--and--

Dick A. Blenden
Carlsbad, New Mexico

*Attorneys for the Plaintiff*

Elizabeth L. German
Ethan D. Watson
Jason Michael Burnette
Shayne Huffman
German & Associates, LLC
Albuquerque, New Mexico

*Attorneys for the Defendants*